MADELEINE M. LANDRIEU, Judge.
LThe plaintiff, Stephen Halmekangas, appeals a summary judgment rendered in favor of the defendants, ANPAC Louisiana Insurance Company, Stephen Harelson and American National Property and Casualty Company. After a de novo review of the record, we find that no genuine issues of material fact exist and that the defendants are entitled to judgment as a matter of law. Accordingly, we affirm.

PROCEDURAL BACKGROUND

On June 21, 2006, Mr. Halmekangas filed this action in Civil District Court against his insurance agent, Stephen Har-elson, his homeowner’s insurer, ANPAC Louisiana Insurance Company (“ANPAC-LA”), and Mr. Harelson’s errors and .omissions insurer, American National Property & Casualty Company (“American National”).[1] Mr. Halmekangas alleges in his petition that he sustained damages as a result of errors committed by his insurance agent and/or his homeowner’s insurer which resulted in his property being un-derinsured. The issue before us on appeal is whether the claims against these defendants are time barred.
Mr. Halmekangas also filed suit against his flood insurance carrier, State Farm Fire and Casualty Company (“State Farm”), in federal court. The ANPAC ^defendants filed a Notice of Removal of the state court action seeking to join the state claim with the pending federal claim. In the federal court action, Mr. Halmekan-gas filed a Motion to Remand, and the ANPAC defendants filed a Motion for Summary Judgment on the issue of per-emption, the same issue on appeal here. In federal court, the trial judge denied the remand and granted summary judgment in favor of ANPAC and Mr. Harelson, finding that Mr. Halmekangas’s claims against them were perempted pursuant to La. R.S. *1194 9:5606.[2] On appeal, however, the United States Fifth Circuit Court of Appeals held that the federal court had neither federal question nor diversity jurisdiction. Accordingly, the Fifth Circuit vacated the judgment of the lower court and ordered that the case be remanded to state court.
On remand, the ANPAC defendants filed the same motion for summary judgment in Civil District Court. After a contradictory hearing, the trial court granted the ANPAC defendants’ motion holding that Mr. Halmekangas’ claims were not timely filed. This appeal follows.

FACTS

Mr. Halmekangas is a real estate broker. In October of 2001, he purchased a piece of residential property located at 2932 S. Carrollton Avenue in New Orleans, Louisiana (“the Property”) for $181,000.00. The Property was in need of extensive renovations. Mr. Halmekangas initially insured the Property with State Farm. Pursuant to notification from State Farm that they were dropping homeowner’s coverage on the Property effective January 1, 2005, Mr. Halmekangas submitted an application for homeowner’s insurance with ANPAC-LA through agent Stephen Har-elson in late December 2004.
The ANPAC defendants contend that Mr. Halmekangas filled out and signed the application for insurance. The application provided $350,000.00 as the fair 1 ¡¡market value of the house and specifically requested the following coverages: (A) Dwelling— $342,000; (B) Other Structures — $34,200; (C) Personal Property — $256,500; and (D) Loss of Use — $85,500. Based on the information provided, Mr. Harelson prepared an Insurance To Value (“ITV”) form which described the Property as a two-story, single family residence with 3400 square feet of living area. Mr. Harelson also performed an external inspection of the Property and took photographs of the Property. He then sent the application, form and photographs to ANPAC-LA for underwriting.
Conversely, Mr. Halmekangas claims that Mr. Harelson or ANPAC-LA independently determined the coverage limits on the Property. He alleges that he merely provided Mr. Harelson with a description of the house, including the fact that it was 5400 square feet and three stories. He contends that Mr. Harelson erred in inspecting only the exterior of the Property, asserting that he should have conducted an interior inspection of the Property as well. However, even with an exterior only inspection of the Property, Mr. Halmekan-gas contends that Mr. Harelson knew or should have known that the Property was larger than the 3400 square feet listed on the application. He further alleges that Mr. Harelson then generated a Replacement Cost Estimate/ITV Report which he forwarded to ANPAC-LA. Mr. Halmek-angas contends that Mr. Harelson and/or ANPAC-LA determined the coverage limits for the Property. For reasons set forth in this opinion, a resolution of this factual dispute is not material to the issue on appeal.
ANPAC-LA issued Policy No. 17-X-V08-463-6 (“the Policy”) to Mr. Halmek-angas on January 3, 2005, effective January 1, 2005, insuring the subject property. Mr. Halmekangas admits receiving the Policy and Declaration pages on the property on or about January 5, 2005. The Declaration is multiple pages. Page one sets forth the types of coverage and the limits of each coverage. Page two of the Declaration is entitled “DESCRIPTION OF YOUR HOUSE” and clearly Ldescribes the insured property as a single *1195 family, two-story dwelling with 3400 square feet of Living Area. Mr. Halmek-angas alleges that this error in denoting the square footage resulted in his being underinsured.
Shortly after issuing the policy, AN-PAC-LA cancelled it based on an erroneous conclusion that the house was being used as a multi-family dwelling. That issue was resolved, and the policy was reinstated as a single family dwelling. However, the policy limits were increased by an ANPAC-LA underwriter to include a 60 square foot open patio not previously used to generate the ITV report.
Thereafter, ANPAC-LA sent Amended or Reinstatement Declarations to Mr. Har-elson on or about January 28, 2005; January 31, 2005; March 18, 2005; March 21, 2005; March 22, 2005; and June 1, 2005. Each of these provided Limits of Liability Coverage for a single family two-story dwelling with 3400 square feet of Living Area as follows: (A) Dwelling— $346,700.00, (B) Other Structures— $34,670.00, (C) Personal Property— $260,030.00, and (D) Loss of Use— $86,675.00. Mr. Harelson testified in his deposition that upon receipt of these Amended or Reinstatement Declarations, he forwarded them to Mr. Halmekangas. In his answers to discovery and in his deposition, Mr. Halmekangas admitted having received them on at least two occasions, January 2005 and March 2005— however, he does not recall having received Page 2 of the Declarations.
On or about August 29, 2005, the Property was damaged as a result of flooding from Hurricane Katrina. . Shortly thereafter, on or about September 4, 2005, the already damaged Property was destroyed by fire. Mr. Halmekangas submitted claims both to State Farm, his flood insurer, and to ANPAC-LA, his homeowner’s insurer. State Farm paid Mr. Halmekan-gas $83,399.57 for damage to the dwelling and $100,000.00 for damage to personal property. ANPAC-LA paid the entire policy limits of $346,700.00 under Coverage A — Dwelling; $260,030.00 under Coverage C — Personal Property; and $86,675.00 under | ^Coverage D — Loss of Use.[3] The total amount received from both policies was $876,804.57.
Mr. Halmekangas asserts that he was grossly underinsured for the Property. He alleges that he did not discover that he was not adequately insured until the Property was destroyed by Hurricane Katrina, and he realized that he was unable to rebuild the Property with the insurance proceeds he received. He alleges that Mr. Harelson committed critical errors in generating the ITV Report. These errors included writing the Policy for a 3400 square foot, two-story house rather than for a 5400 square foot, three-story house, and failing to properly inspect the Property. He also alleges that ANPAC-LA’s underwriting department erred in failing to confirm the property description submitted by their agent, Mr. Harelson. Mr. Halmekangas contends that a new ITV Report run after Hurricane Katrina with the appropriate property description yielded an ITV value of $602,000.00.
Mr. Halmekangas filed suit on June 21, 2006, approximately 18 months after first receiving the policy.

ISSUE

The issue presented for our review is whether the trial court properly applied La. R.S. 9:5606 to the facts of this case *1196 finding that Mr. Halmekangas’s claims are perempted.

ASSIGNMENTS OF ERROR

Mr. Halmekangas alleges two assignments of error:
1. That the trial court erred in determining that La. R.S. 9:5606 applies to plaintiffs claims against ANPAC-LA; and,
2. That the trial court erred in determining the accrual date for the calculation of the preemptive period.

\r,DISCUSSION

Appellate review of summary judgment is de novo using the same criteria as the trial court to determine whether a genuine issue of material fact exists to preclude a judgment as a matter of law. See, Magnon v. Collins, 98-2822 (La.7/7/99), 739 So.2d 191, 195; Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180, 1182-1183. Louisiana Code of Civil Procedure art. 966 requires that the mover prove “that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966(B). Once the mover makes a showing that the motion should be granted the burden shifts to the opposing party to demonstrate that a material factual issue remains. If the opposing party fails to present sufficient evidence to overcome this burden, the motion shall be granted. Id.

Applicability of La. R.S. 9:5606

La. R.S. 9:5606 provides, in part, that claims brought against “any insurance agent, broker, solicitor, or other similar licensee under this state, whether based in tort, or breach of contract, or otherwise, arising out of an engagement to provide insurance services shall be brought ...” within certain time periods. Mr. Halmek-angas asserts that this provision applies only to an “insurance agent, broker, solicitor, or other similar licensee,” and that ANPAC-LA does not fit that definition and should not be afforded its protection. Rather, Mr. Halmekangas contends that ANPAC-LA is directly responsible for the alleged errors that caused his damages and is also responsible under the doctrine of respondeat superior for the negligent actions of Mr. Harelson.
Mr. Halmekangas contends that the timeliness of his claim directly against AN-PAC-LA, as the insurance company that erred in writing his policy, should be governed by La. C.C. art. 3492, with an accrual date commencing “to run from the day injury or damage is sustained.” He alleges that his damages were not |7sustained until after August 29, 2005, and that he filed this action within one year of that date. As such, he asserts that his claim is timely. Mr. Halmekangas fails to provide this court with any jurisprudential support of his position, and we can find none.
ANPAC-LA contends that any allegations made by Mr. Halmekangas with regard to ANPAC-LA are derivative of his claims against Mr. Harelson. Moreover, any alleged errors on the part of ANPAC-LA are a direct result of and stem from the information provided to it by Mr. Har-elson. Because Mr. Halmekangas’s claims against ANPAC-LA are derivative of those against the agent, ANPAC-LA contends that the plaintiffs claims against ANPAC-LA are governed by La. R.S. 9:5606. We agree.
In Klein v. American Life and Cas. Co., 2001-2336, pp. 4-5 (La.App. 1 Cir. 6/27/03), 858 So.2d 527, 531, writ denied 2003-2073 (La.11/7/03) 857 So.2d 497, and writ denied 2003-2101 (La.11/7/03) 857 So.2d 499, the First Circuit held that because the acts of an insurance agent are generally imputable to the insurer he represents, the per-emptive periods set out in La. R.S. 9:5606 *1197 apply to the claims against the insurer. Mr. Halmekangas’s claim against AN-PAC-LA is governed by La. R.S. 9:5606 and not by La. C.C. art. 3492.

Accrual date for calculation of the per-emptive period

La. R.S. 9:5606 provides two preemptive periods: one year from the date of the alleged negligent act or omission; or, one year from the date the negligence was discovered or should have been discovered, as long as that date is within three years of the alleged negligent act or omission.
Mr. Halmekangas contends that his action is not perempted under La. R.S. 9:5606 because it was filed less than one year after Hurricane Katrina, within one year of his discovery of the errors committed, and within three years of the date of the alleged wrongful act. The ANPAC defendants contend that Mr. Halmekangas | shad actual and/or constructive notice of the alleged errors associated with his policy more than one year prior to the filing of his lawsuit. To address this issue, this Court must determine when Mr. Halmek-angas discovered or should have discovered that he was underinsured.
The evidence presented establishes that on December 30, 2004, Mr. Halmekangas made an application for homeowner’s insurance with ANPAC-LA through Mr. Harelson. According to the affidavits filed into the record of these proceedings, Mr. Harelson forwarded to Mr. Halmekangas his Policy and his Amended and/or Reinstatement Declarations, all containing the Limits of Liability and property description, on at least five occasions prior to the date of loss. Mr. Halmekangas acknowledges having received these Declarations on at least two of these occasions, once in January 2005 and once in March 2005. However, he does not recall having received Page 2 — the page which describes his property as a single-family, 3400 square foot dwelling. He contends that the ANPAC defendants failed to prove actual mailing of this document to him and that this creates a material issue of fact which would preclude summary judgment in this matter. We disagree.
La. R.S. 22:873 addresses the Delivery of Policy. Subsection A provides as follows:
Subject to the insurer’s requirements as to payment of premium, every policy shall be delivered to the insured or to the person entitled thereto within a reasonable period of time after its issuance. Delivery may be by the United States Postal Service, personal delivery, private courier, or by electronic transaction in accordance with the Louisiana Uniform Electronic Transactions Act, R.S. 9:2601 et seq.
As such, upon mailing of the policy by the insurance company to the insured, it is legally presumed that the plaintiff did, in fact, receive the documents. This Court faced this situation in Rapp v. GEICO Indemnity Co., 2005-0368, pp. 3-5 (La. App. 4 Cir. 2/8/06), 925 So.2d 626, 629. In Rapp, the trial court granted Geico’s | amotion for partial summary judgment on the issue of coverage. The plaintiff presented an affidavit that he did not receive the policy, and the insurer presented internal underwriting documents and an affidavit from an underwriter stating that the policy had been mailed. This Court found that the trial court’s granting of summary judgment was warranted.
This Court finds that there is ample evidence that ANPAC-LA sent the document at issue to Mr. Halmekangas. In his deposition, Mr. Harelson testified that upon receipt of the initial policy from AN-PAC and any subsequent amendments, he reviewed them for accuracy as to requested coverage and agreed upon premiums, *1198 signed them and mailed them to Mr. Hal-mekangas. Mr. Halmekangas admits having received the initial policy and having read it in January of 2005 and March of 2005. Additionally, in his responses to discovery, Mr. Halmekangas produced to the ANPAC defendants a copy of the Declarations page signed by Mr. Harelson. Mr. Halmekangas also produced the email transmission by which he had provided documents in his possession to his counsel. This transmission contained a complete copy of the signed Declarations, including Declarations Page 2 — Description of Your House, and “print dates” of January 3, 2005 and March 22, 2005. According to Mr. Harelson’s affidavit, he did not keep signed copies of these documents. Thus, only Mr. Halmekangas could have had them in his possession.
Despite Mr. Halmekangas’s contention that this factual dispute precludes summary judgment, we find that there is no issue of material fact as to Mr. Halmekan-gas’s receipt of his policy. The ANPAC defendants have presented sufficient proof that they mailed the policy and all pertinent pages of it to Mr. Halmekangas as early as January of 2005, and he acknowledges having received the policies on at least two occasions. As a result, the burden on this issue shifts to Mr. Halmekan-gas to produce factual support sufficient to establish that he will |inbe able to satisfy his burden of proof at trial. He has been unable to do so. His self-serving affidavit that he did not recall having received one page of a multi-page document is rebutted by the fact that this particular page was in his possession and he produced it to the defendants in discovery. We agree with the trial court that Mr. Halmekangas is not capable of carrying his burden at trial.
Having determined that Mr. Halmekan-gas is legally presumed to have received a copy of the policy no later than March 2005, and that all of the ANPAC defendants fall within the parameters of La. R.S. 9:5606, we address the question of whether Mr. Halmekangas’s claim was timely filed.
La. R.S. 9:5606 sets forth a one year peremptive period, and provides in pertinent part as follows:
A. No action for damages against any insurance agent, broker, solicitor, or other similar licensee under this state, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide insurance services shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect, is discovered or should have been discovered. However, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.
* * *
D. The one-year and three-year periods of limitation provided in Subsection A of this Section are peremptive periods within the meaning of Civil Code Article 3458 and, in accordance with Civil Code Article 3461, may not be renounced, interrupted, or suspended. (Emphasis added.)
The Louisiana Supreme Court addressed the issues of the duty of an agent and of the responsibility of the insured in Isidore Newman School v. J. Everett Eaves, Inc., 20092161, (La.7/6/10), 42 So.3d 352. In that case, Newman school filed an *1199 action against their insurance agency and the agency’s errors and | n omissions insurer, alleging that a broker from the agency was negligent in failing to advise school business managers that business income/extra expense (“BI & EE”) coverage under property and casualty insurance included tuition loss. Upon the closure of the school for two months following Hurricane Katrina, the school discovered that tuition loss was included in their BI & EE coverage and that they only had $250,000.00 of coverage. This amount was insufficient to cover the tuition losses they sustained. The school alleged that the broker and agency were negligent in failing to advise them that the amount purchased was insufficient, and that they misled the school into believing that the BI & EE coverage was limited to physical damages to buildings. The Louisiana Supreme Court held that Louisiana law does not impose upon an insurance agent the duty to advise a client as to the amount of insurance coverage to obtain. In so ruling, it restated that it is the insured’s responsibility to request the type of coverage and the amount of coverage needed, and to read the policy when it is received. The insured is deemed to know the policy contents. See also: Seruntine v. State Farm Fire and Cas. Co., 2010-1108 (La.9/3/10), 42 So.3d 968; City Blueprint & Supply Co., Inc. v. Boggio, 2008-1093, p. 8 (La. App. 4 Cir. 12/17/08), 3 So.3d 62, 67.
In the case at bar, the evidence establishes that Mr. Halmekangas received his policy in January and March of 2005. The policy lists coverage for his dwelling of only $342,000. It also indicates that the property was a 3400 square foot, single family, two-story dwelling. It was Mr. Halmekangas’s duty at that time to read the policy. Using either January 2005 (the date of the alleged negligent act) or March 2005 (the latest admitted date of the discovery of the alleged wrongful act), more than one year elapsed before Mr. Halmek-angas filed 112this action on June 21, 2006. Accordingly, we find that Mr. Halmekan-gas’ claims against the ANPAC defendants are perempted under La. R.S. 9:5606.

CONCLUSION

The judgment of the trial court is affirmed.
AFFIRMED

. For ease of discussion, these three defendants are often referred to as "the ANPAC defendants.”

. All claims against State Farm have been resolved.

. There were no Other Structures to which Coverage B was applicable, so no payments were issued under this Coverage.