ROSEMARY LEDET, Judge.
|, This is an insurance agent malpractice case coupled with an insurance coverage dispute. The insured, Emmett B. Chapi-tal, Jr., M.D., and his wife, Jovita Marie Chapital, brought this suit against the insured’s agent, Harry Kelleher & Co., Inc. (“Kelleher”); the insurer of the insured’s agent, Westport Insurance Corporation (‘Westport”); and the insured’s own insurer, Louisiana Citizens Property Insurance Corporation (“Citizens”). From the trial court’s judgment granting all three defendants’ peremptory exceptions of peremption and motions for summary judgment and dismissing all the plaintiffs’ claims, the plaintiffs, Dr. Chapital and Mrs. Chapital, appeal. For the reasons that follow, we affirm in part, reverse in part, and remand to the trial court for further proceedings.
FACTUAL AND PROCEDURAL BACKGROUND
In 1989 or 1990, Dr. Chapital purchased rental property located at 3106 Republic Street, New Orleans, Louisiana 70119 (the “Property”).[1] The Property was one of several rental properties that Dr. Chapital owned in New Orleans. In 1997, Dr. Cha-pital obtained, through Kelleher, dwelling coverage for the Property |2with the Louisiana Joint Reinsurance Plan. In August 2004, Dr. Chapital’s dwelling policy with the Louisiana Joint Reinsurance Plan was not renewed. Thereafter, Dr. Chapital obtained, through Kelleher, dwelling coverage for the Property through Citizens.[2]
On August 29, 2005, Hurricane Katrina struck the New Orleans area and caused extensive damage to the Property. Citizens paid Dr. Chapital’s Hurricane Katrina damage claim, and Dr. Chapital began repairs on the Property. During the repairs, the Property was vacant. From 2006 through 2011, Dr. Chapital paid the premiums to insure the Property; and Citizens annually renewed the Policy.
On May 18, 2011, Dr. Chapital reported to Kelleher both a theft and a fire claim. The theft claim was that, in March 2011, a theft of copper occurred at the Property. The fire claim was that, in May 2011, a neighbor’s residence caught fire and caused damage to the Property. On the dates of the reported theft and fire, Dr. Chapital had not yet completed the repair of the Hurricane Katrina damage; thus, the Property was still vacant.
*80 On July 25, 2011, Citizens sent Dr. Cha-pital a letter denying coverage for the theft claim on the basis that theft was not a covered loss under the Policy.[3] On lathe same date, Citizens sent Dr. Chapital a letter denying coverage for the fire claim on the basis that the Property had been vacant for more than 60 days. Citizens explained in the letter that because the Property had been vacant for more than 60 days before the fire, the Policy was suspended by its own terms at the time of the loss.[4] Citizens also included in the letter a reservation of rights; it stated: “[w]e expressly reserve our rights to assert all other rights or defenses that we may have to this claim even though not enumerated above. We do not waive or relinquish any of our rights under the policy of insurance.”
On January 16, 2012, Dr. Chapital filed a petition for damages against Kelleher and Citizens. In his petition, Dr. Chapital asserted multiple causes of action against both Kelleher and Citizens, including negligence by agent (agent malpractice), breach of contract, breach of fiduciary duty, fraud, bad faith, and unjust enrichment.
|4In June 2013, Kelleher filed a motion for summary judgment and a peremptory exception of peremption.[5] As to the former motion, Kelleher argued that it had no duty to identify Dr. Chapital’s insurance needs. As to the latter exception, Kelle-her argued that any claim against it for lack of coverage due to the application of the 60-day vacancy clause in the Policy was perempted by the one-year and three-year periods set forth in La. R.S. 9:5606.
Citizens filed a separate motion for summary judgment. In its motion, Citizens argued that it was not liable for the fire loss given the undisputed fact that the Property had been vacant since Hurricane Katrina (August 2005) — in excess of 60 days. Citizens contended that the 60-day vacancy clause precluded coverage. In the alternative, Citizens joined in Kelleher’s motion for summary judgment and exception of peremption. In so doing, Citizens contended that if it is found liable for any of Kelleher’s actions, it too should receive the benefit of peremption under La. R.S. 9:5606.[6]
*81 In opposing the motions for summary judgment, Dr. Chapital provided his own affidavit in which he attested to the following:
• That I was told by my agent, Kelleher, that the 60 day vacancy clause on my policy, was suspended on all properties that had suffered damages in Hurricane Katrina.
[• That this information seemed logical to me, as no one in New Orleans could have possibly repaired their property in 60 days. It took years for most of us.
• That I paid Kelleher directly, annual premiums ongoing for 2006, 2007, 2008, 2009, 2010 and 2011. At no time, was I ever advised by Defendants, Kelleher and Citizens, that the 60 day vacancy clause had been reinstated.
In opposing the exception of peremption, Dr. Chapital contended that the peremp-tive period did not commence to run until July 2011 when Citizens, by letter, informed him that it was denying the fire claim because it was enforcing the 60-day vacancy clause.
On August 6, 2013, the trial court rendered judgment in the defendants’ favor, granting the motions for summary judgment and exception and dismissing all of the plaintiffs’ claims with prejudice. This appeal followed.
STANDARD OF REVIEW
The standard of review of a trial court’s ruling granting a motion for summary judgment, pursuant to La. C.C.P. arts. 966 and 967, and the jurisprudence, is well-settled. As this court has noted, it can be summarized as follows:
Appellate courts review the grant or denial of a motion for summary judgment de novo, using the same criteria applied by trial courts to determine whether summary judgment is appropriate. This standard of review requires the appellate court to look at the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, to determine if they show that no genuine issue as to a material fact exists, and that the mover is entitled to judgment as a matter of law. A fact is material when its existence or nonexistence may be essential to the plaintiffs [sic] cause of action under the applicable theory of recovery; a fact is material if it potentially insures or precludes recovery, affects a litigant’s ultimate success, or determines the outcome of the legal dispute. A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, no need for trial on that issue exists and summary judgment is appropriate. To affirm a summary judgment, we must find reasonable minds would inevitably | fiConclude that the mover is entitled to judgment as a matter of the applicable law on the facts before the court.
The summary judgment procedure is designed to secure the just, speedy and inexpensive determination of actions. Summary judgments are favored, and the summary judgment procedure shall be construed to accomplish these ends. The code provides that where [as in the instant case] the party moving for summary judgment will not bear the burden *82 of proof at trial, their burden does not require them to negate all essential elements of the adverse party’s claim, but rather to point out to the court that an absence of factual support exists for one or more elements essential to the adverse party’s claim. Thereafter, if the adverse party fails to produce factual support sufficient to establish that it will be able to satisfy its evidentiary burden of proof at trial, no genuine issue of material fact exists, and the movant is entitled to judgment as a matter of law. The adverse party cannot rest on the mere allegations or denials of his pleadings when a motion for summary judgment is made and supported by affidavits, but is required to present evidence establishing that material facts are still at issue.
Mcmdina, Inc. v. O’Brien, 13-0085, p. 5 (La.App. 4 Cir. 7/31/13), — So.3d -, -, 2013 WL 3945030 (collecting cases).
“Whether an insurance policy provides for, or precludes, coverage as a matter of law is an issue that can be resolved within the framework of a motion for summary judgment.” Orleans Parish Sch. Bd. v. Lexington Ins. Go., 12-1686, p. 9 (La.App. 4 Cir. 6/5/13), 118 So.3d 1203, 1212 (citing Sumner v. Mathes, 10-0438, p. 6 (La.App. 4 Cir. 11/24/10), 52 So.3d 931, 935). As a general rule, “the interpretation of an insurance policy is a question of law.” Lexington, 12-1686 at p. 9, 118 So.3d at 1212 (citing Armenia Coffee Corp. v. American Nat’l Fire Ins. Co., 06-0409, p. 6 (La.App. 4 Cir. 11/21/06), 946 So.2d 249, 253).
Likewise, the peremptory exception of peremption “involves the interpretation of a statute, which is a legal question.” Robert v. Robert Mgmt. Co., LLC, 11-0406, p. 3 (La.App. 4 Cir. 12/7/11), 82 So.3d 396, 398. “Legal questions are reviewed utilizing the de novo standard of review.” Id. (citing Cleco \nEvangeline, LLC v. Louisiana Tax Comm’n, 01-2162, p. 3 (La.4/3/02), 813 So.2d 351, 353). Finally, we review a trial court’s factual findings under the manifestly erroneous or clearly wrong standard of review. Robert, 11-0406 at p. 3, 82 So.3d at 398 (citing Dahan Novelties & Co., LLC v. Ohio Cas. Ins. Co., 10-0626, p. 2 (La.App. 4 Cir. 10/20/10), 51 So.3d 129,132).
DISCUSSION
For purposes of analysis, we divide Dr. Chapital’s arguments on appeal into the following four categories: (i) peremption, (ii) the 60-day vacancy clause, (iii) judicial confession and fraud, and (iv) unjust enrichment.[7] We separately address each issue.

(i) Peremption

Peremption is defined as “a period of time fixed by law for the existence of a right.” La. C.C. art. 3458. “Unless timely exercised, the right is extinguished upon the expiration of the peremptive period.” Id. In this case, the governing periods of time are set forth in La. R.S. 9:5606, which provides both one-year and three-year per-emptive periods for bringing any action, in tort or contract, against an insurance agent arising out of an engagement to provide insurance services. La. R.S. 9:5606(D) (providing that “[t]he one-year and three-year periods of limitation provided in Subsection A of this Section are peremptive periods within the meaning of Civil Code Article 3458 and, in accordance with Civil Code Article 3461, may not be *83 renounced, interrupted, or suspended.”). As to the one-year period, the statute states that any such action shall be brought “within one year from the date of the alleged act, omission, or neglect, or within one year from the |8date that the alleged act, omission, or neglect is discovered or should have been discovered.” La. R.S. 9:5606(A). As to the three-year period, the statute provides that “even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.” Id.
The only exception to the per-emptive period provided in La. R.S. 9:5606 is fraud. La. R.S. 9:5606(C) (providing that “[t]he peremptive period provided in Subsection A of this Section shall not apply in cases of fraud, as defined in Civil Code Article 1953.”). The continuing tort doctrine, which is a suspensive principle, is inapplicable to claims governed by La. R.S. 9:5606. Sitaram, Inc. v. Bryan Ins. Agency, Inc., 47,337, p. 6 (La.App. 2 Cir. 9/19/12), 104 So.3d 524, 530. “Generally, subsequent renewals of insurance policies do not operate to restart peremption.” Si-taram, 47,337 at p. 7, 104 So.3d at 530 “However, renewals can be the basis of separate torts, if the complained of conduct constitutes separate and distinct acts, which give rise to immediately apparent damages.” Id. The test is “whether the actions of the insurance agent at the time of renewal can be construed to constitute an act separate from the initial policy procurement.” Id. The one-year peremptive period commences to run when the insured receives a copy of the policy. See Serun-tine v. State Farm Fire and Cas. Co., 10-1108 (La.9/3/10), 42 So.3d 968. This is because it is an “insured’s obligation to read the policy when received, since the insured is deemed to know the policy contents.” Isidore Newman School v. J. Everett Eaves, Inc., 09-2161, p. 12 (La.7/6/10), 42 So.3d 352, 359.
In this case, Dr. Chapital contends that the peremptive period in La. R.S. 9:5606 did not begin to run until July 2011 when Citizens, by letter, denied ^coverage on the fire claim and informed him that it was enforcing the 60-day vacancy provision. According to Dr. Chapital, his suit, filed less than a year later (on January 16, 2012), was timely.
Kelleher counters that all of Dr. Chapi-tal’s claims are perempted by the one-year and three-year periods set forth in La. R.S. 9:5606. Kelleher notes that after Hurricane Katrina, there was no action on its part separate and apart from the initial procurement of the Policy. It further notes that each year Citizens renewed the Policy; and each year Dr. Chapital received a copy of the Policy, which included the 60-day vacancy clause. Kelleher points out that a review of the Policy would have revealed that Dr. Chapital needed a vacancy or builder’s risk policy; however, he never requested such a policy. Kelleher contends that it had no duty to recommend or to provide such a policy.[8] *84 Regardless, Kelleher contends that “any claim against Kelleher for failure to recommend and/or procure such a policy (even though Kelleher did not have such a duty), was perempted three years after Hurricane Katrina or one year after Dr. Chapital received his Citizens policy (after Hurricane Katrina).” Likewise, Kelleher contends that even assuming, arguendo, its adjustor told Dr. Chapital that the 60-day vacancy provision was waived, the statement was made in the aftermath of Hurricane Katrina — in late 2005 or early 2006 — yet suit was not filed until January 2012 — over three years after the alleged | ^misrepresentation. The same is true, Kelleher contends, as to the suggested duty — allegedly assumed by its same adjustor — to inspect the Property on a yearly basis. Kelleher argues that any claim based on either of its alleged negligent acts — its adjuster’s misrepresentation regarding the 60-day vacancy period or its adjuster’s assumed duty to inspect the Property — is barred by peremption.
Agreeing with Kelleher’s contentions, we find that all of Dr. Chapital’s negligence claims — agent malpractice claims — against Kelleher are barred by peremption. Both of Kelleher’s alleged negligent acts occurred in the aftermath of Hurricane Katrina — no later than 2006. Dr. Chapital annually received a copy of the Policy, which contained the 60-day vacancy provision. Dr. Chapital should have discovered the alleged negligent acts when he received a copy of the Policy the first year after Hurricane Katrina. Dr. Chapi-tal’s negligence claims against Kelleher prescribed either one year after he received the Policy the first year after Hurricane Katrina — sometime in 2006 or 2007 — or three years after the alleged negligent acts — sometime in 2008 or 2009. Dr. Chapital did not file suit until January 16, 2012. Thus, Dr. Chapital’s negligence claims against Kelleher are barred by per-emption.
As noted, Citizens contends that to the extent Dr. Chapital’s claims against it are based on the imputation of Kelle-her’s actions, such claims are likewise per-empted. In support, Citizens cites Hal-mekangas v. ANPAC Louisiana Ins. Co., 11-1293, pp. 6-7 (La.App. 4 Cir. 6/8/12), 95 So.3d 1192, 1196-97, unit denied, 12-1542 (La.10/12/12), 98 So.3d 873, which held that when an insurer’s errors are derivative of claims against its insurance agent, the insurer receives the benefit of peremption under La. R.S. 9:5606. Citizens’ reliance on Halmekangas, supra, is misplaced.
| „Both Citizens and Kelleher state in their appellate briefs that there is no evidence of an agency relationship between them.[9] As Kelleher puts it, “[a]ll of Dr. Chapital’s arguments seem to be directed at both Citizens and Kelleher, even though Dr. Chapital has not provided any evidence of a relationship between the two.” As Citizens puts it, “neither [Kelleher nor Citizens] should be held liable for the actions of the other.” Given the lack of any evidence of an agency relationship between Citizens and Kelleher, there is no basis for imputing Kelleher’s liability to Citizens. Thus, there is no basis for allowing Citizens the benefit of peremption under La. R.S. 9:5606.
In sum, we find that Dr. Chapital’s negligence claims against Kelleher are barred by peremption and that Citizens is not entitled to the benefit of peremption.

*85
(ii) The 60-day vacancy clause

The Policy at issue contains a statutorily mandated 60-day vacancy clause. See La. R.S. 22:1311(F)(2). As Citizens points out, the statutory requirement that this clause be included in the Policy belies Dr. Chapi-tal’s argument that the clause violates public policy. Citizens also points out that the clause is not ambiguous. The clause plainly states that the “Company shall not be liable for a loss occurring ... [w]hile a described building, whether intended for occupancy by owner or tenant, is vacant or unoccupied beyond a period of sixty consecutive days.” As both Citizens and Kelleher point out, an insured, such as Dr. Chapital, is presumed to know the contents of his policy. Isidore Newman School, 09-2161 at p. 12, 42 So.3d at 359. Thus, knowledge of the 60-day vacancy clause in the Policy is [^imputed to Dr. Chapital. The narrow issue is whether there was a valid waiver of the 60-day vacancy clause.
Simply stated, Dr. Chapital’s position is that the 60-day vacancy clause was waived because one of Kelleher’s adjustors advised him that there were no time constraints for repairs of property damaged by Hurricane Katrina and that the 60-day vacancy clause was waived for such properties. According to Dr. Chapital, he was never informed that the 60-day vacancy clause had been reinstated until Citizens denied his fire claim. Dr. Chapital’s sole support for his position is his own affidavit, quoted earlier in this opinion, in which he attests to these facts.
Kelleher, joined by Citizens, contends that Dr. Chapital’s affidavit should be disregarded because it is inconsistent with his earlier deposition testimony. See Row v. Pierremont Plaza, LLC, 35,796, p. 15 (La. App. 2 Cir. 4/3/02), 814 So.2d 124, 131 (citation omitted) (holding that “a deposition is the time for the plaintiff to make a record capable of surviving summary judgment — not a later filed affidavit.”). In his deposition, Dr. Chapital testified that he did not know about the 60-day vacancy clause. Particularly, when asked whether he knew that the Policy stated that if nobody lives there within sixty days, the policy had to be changed, he answered no. Given the contradiction between Dr. Cha-pital’s affidavit and his deposition testimony, Kelleher contends that the affidavit should be disregarded. Kelleher further contends that even if the affidavit is considered and its averments assumed to be true for purposes of summary judgment, the trial court did not err in granting summary judgment. In support, Kelleher cites the express requirement in the Policy that any waiver be in writing.
According to the terms of the Policy, any change or waiver of a policy provision must be in writing. As Citizens points out, the Policy contains the 1 iafollowing standard provision, required by La. R.S. 22:1311(F)(2), providing that a change or a waiver of a policy provision must be in writing:
Added provisions. The extent of the application of insurance under this policy and of the contribution to be made by this Company in case of loss, and any other provision or agreement not inconsistent with the provisions of this policy, may be provided for in writing added hereto, but no provisions may be waived except such as by the terms of this policy is subject to change.
Waiver provisions. No permission affecting this insurance shall exist, or waiver of any provision be valid unless granted herein or expressed in writing added hereto. No provision, stipulation,- or forfeiture shall be held to be waived by any requirement or proceeding on the part of this Company relating to *86 appraisal or to any examination provided for herein.
Based on the above provision, a waiver of the 60-day vacancy clause was required to be in writing to be effective. Given the only alleged waiver was oral, it was not effective. Thus, Citizens was entitled to rely on the 60-day vacancy clause to deny Dr. Chapital’s fire claim. For this reason, the trial court correctly granted Citizens’ motion for summary judgment as to Dr. Chapital’s contractual coverage claim against it. As discussed below, we reach a different result as to Dr. Chapital’s unjust enrichment claim against Citizens.

(Hi) Judicial confession and fraud

A judicial confession is defined as “a declaration made by a party in a judicial proceeding. That confession constitutes full proof against the party who made it. A judicial confession is indivisible and it may be revoked only on the ground of error of fact.” La. C.C. art. 1853.
To state a cause of action for fraud, the following three elements must be alleged: “(1) a misrepresentation of material fact, (2) made with the intent to deceive, (3) causing justifiable reliance with resultant injury.” Becnel v. Grodner, 07-1041, p. 3 (La.App. 4 Cir. 4/2/08), 982 So.2d 891, 894. Moreover, fraud must lube alleged with particularity. La. C.C.P. art. 856 (providing that “[i]n pleading fraud or mistake, the circumstances constituting fraud or mistake shall be alleged with particularity;”).
Dr. Chapital’s judicial confession and fraud claims against Citizens and Kelleher are identical. He contends that their actions in renewing the Policy for the 2011-12 term, with knowledge that the Property had been vacant since Hurricane Katrina, were both a judicial confession and fraud. In support, Dr. Chapital relies on the following chronology of events:
• After he received the July 25, 2011 notice that his fire claim was denied based on the 60-day vacancy clause, he requested a refund of the premiums that he had paid from 2006 through 2011 for no coverage.
• Appearing to have changed their mind on the coverage issue, Citizens and Kelleher requested that Dr. Chapital pay the annual premium of $1,718 to renew the Policy for the 2011-12 term.
Simply stated, Dr. Chapital characterizes Citizens’ and Kelleher’s actions of requesting and accepting the premium payment as a judicial confession of the waiver of the 60-day vacancy clause and fraud.
Neither Kelleher nor Citizens made any statements in a judicial proceeding that could be classified as a judicial confession of the waiver of the 60-day vacancy clause. Thus, by definition, neither Kelleher nor Citizens made a judicial confession of that fact.
Nor is there any evidence of fraud on the part of Citizens or Kelleher. Kelle-her points out that the Policy was issued and annually renewed by Citizens. Citizens points out that on June 27, 2011 its underwriting department sent out an automatic notice of renewal. At that juncture, Citizens was still investigating the fire claim; and Dr. Chapital had not yet filed this suit. Thereafter, Citizens | ^discovered that the Property had been vacant since Hurricane Katrina.[10] Once *87 Citizens’ underwriting department was advised that there was no coverage due to the vacancy, it refunded the premium that Dr. Chapital paid for the 2011-12 Policy term. Given this chronology of events, the record does not support Dr. Chapital’s fraud claim against Citizens and Kelle-her.[11]

(iv) Unjust enrichment

The jurisprudence has enumerated the following five factors that are required to establish an unjust enrichment claim: “(1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and resulting impoverishment, (4) an absence of “justification” or “cause” for the enrichment and impoverishment, and (5) no other remedy at law available to plaintiff.” Dugas v. Thompson, 11-0178, p. 13 (La.App. 4 Cir. 6/29/11), 71 So.3d 1059, 1067-68 (citing JCD Marketing Co. v. Bass Hotels and Resorts, Inc., 01-1096, p. 13 (La.App. 4 Cir. 3/6/02), 812 So.2d 834, 842 (citing Baker v. Maclay Properties Co., 94-1529, p. 18 (La.1/17/95), 648 So.2d 888, 897)). The Louisiana Legislature has codified the principle of unjust enrichment in La. C.C. art. 2298, which provides: “[a] person who has been enriched without cause at the expense of another person is bound to compensate that person.” La. C.C. art. 2298. Article 2298 also states |1fithat “[t]he remedy declared here is subsidiary and shall not be available if the law provides another remedy for the impoverishment.” Id.
Dr. Chapital contends that Citizens and Kelleher have been unjustly enriched by his payments of premiums from 2006 through 2011 because he had no coverage under the Policy during that period. In support, he cites the following deposition testimony of Citizens’ corporate representative:
Q: All right. Why didn’t you refund Dr. Chapital’s premiums for those years then if he wasn’t covered?
A: I don’t know.
Dr. Chapital also contends that the trial judge did not dismiss his unjust enrichment claims. The basis for this contention is the trial court judge’s statement that was made at the close of the motion hearing. In response to the request for a specific ruling as to the unjust enrichment claim, the trial court judge stated: “It’s on the record, but I don’t know how I can rule on it. There’s not anything in front of me.” Based on this statement, Dr. Chapi-tal contends that the unjust enrichment claims were not addressed. He therefore seeks a remand for the trial court to address his unjust enrichment claims.
Dr. Chapital’s contention that the trial court did not address his unjust enrichment claims is belied by the trial court’s issuance of a written, final judgment. The final judgment, which granted the defendants’ motions for summary judgment and peremptory exceptions of per-emption, dismissed all of Dr. Chapital’s claims — including his unjust enrichment claims — against all of the defendants with prejudice. The trial court’s issuance of a final judgment dismissing all of the claims is inconsistent with its statement that the unjust enrichment claim was not part of the motions for summary judgment that it *88 granted. Regardless, “the 117district court’s oral or written reasons for judgment form no part of the judgment[;] ... appellate courts review judgments, not reasons for judgment.” Wooley v. Luck-singer, 09-0571, p. 77 (La.4/1/11), 61 So.3d 507, 572 (collecting cases).
Nonetheless, Dr. Chapital’s unjust enrichment claim against Kelleher is barred by peremption. See Vagelos v. Abramson, 12-1235, p. 22 (La.App. 4 Cir. 10/2/13), 126 So.3d 639, 652 (agreeing with trial court’s finding that “ ‘[o]ne cannot use the theory of unjust enrichment to revive a claim that has already been prescribed or been [perempted]’ ”);[12] see also Dugas, 11-0178 at p. 14, 71 So.3d at 1068 (noting that “[t]o find that [the plaintiff] ... now has no other remedy and to provide it one under unjust enrichment would be tantamount to allowing any plaintiff who let his cause of action prescribe ... to recover under an enrichment theory.”). As discussed above, Citizens is not entitled to the benefit of peremption. However, as discussed below, we find merit to Dr. Chapi-tal’s contention that the trial court erred in dismissing his unjust enrichment claim against Citizens.
Once the 60-day vacancy period elapsed in 2005 (60 days after Hurricane Katrina), Citizens had no obligation under the Policy to provide coverage to Dr. Chapital for the Property. Despite the total cessation of coverage before the end of 2005, Citizens continued to collect premiums from Dr. Chapital annually from 2006 through 2011. Based on these circumstances, a dispute exists as to whether Dr. Chapital can satisfy two of the five elements required for his unjust enrichment claim — (4) an absence of “justification” or “cause” for the enrichment and impoverishment, and (5) no other remedy at law available to plaintiff. For this |iSreason, we find the trial court erred in granting Citizens’ motion for summary judgment as to Dr. Chapital’s unjust enrichment claim. On this basis, we find that Dr. Chapital is entitled to a remand for the trial court to address his unjust enrichment claim against Citizens.

DECREE

For the foregoing reasons, the trial court’s judgment is reversed insofar as it grants Citizens’ motion for summary judgment as to Dr. Chapital’s unjust enrichment claim. In all other respects, the trial court’s judgment is affirmed. This case is remanded to the trial court for consideration of Dr. Chapital’s unjust enrichment claim against Citizens.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.

. It is undisputed that Mrs. Chapital lacked an ownership interest in the Property. It is also undisputed that she had no involvement with procuring insurance for the Property. Thus, she is not a proper party plaintiff. The trial court correctly dismissed all of her claims. For this reason, we refer to Dr. Cha-pital as the sole plaintiff.

. On January 1, 2004, Louisiana Citizens Property Insurance Corporation ("Citizens”) was formed.

. The Policy contains the following provision:
PERILS INSURED AGAINST
We insure for direct physical loss to the property covered caused by a peril listed below unless the loss is excluded in the General Exclusions.
⅝ ⅜ ⅜
8. Vandalism or malicious mischief.
This peril does not include loss:
a. by pilferage, theft, burglary or larceny
9. Damage by Burglars, meaning damage to covered property caused by Burglars.
This peril does not include:
a. theft of property ...

. The policy contains the standard fire policy clauses as required by Louisiana law pursuant to La. R.S. 22:1311(F)(2), which provides:
Condition suspending or restricting insurance — Unless otherwise provided in writing added hereto, this Company shall not be liable for loss occurring:
(a) While the hazard is increased by any means within the control or knowledge of the insured; or
(b) While a described building, whether intended for occupancy by owner or tenant, is vacant, or unoccupied beyond a period of sixty consecutive days....

. As noted at the outset, Kelleher’s insurer, Westport, was also named as a defendant. Westport joined in Kelleher's exception of peremption and its motion for summary judgment, which were granted as to Westport. On appeal, Westport filed an appellate brief, adopting Kelleher’s appellate brief. For ease of discussion, we refer collectively to Kelleher and its insurer, Westport, as "Kelleher.”

. Citizens pointed out that it never admitted there was an agency relationship between it *81 and Kelleher. Citizens further pointed out, as discussed elsewhere in this opinion, that there was no evidence suggesting any such agency relationship. Nonetheless, it contended that should the coverage issue be decided against it based upon Kelleher’s imputed actions, Citizens should also receive the benefit of the peremption defense under this court’s current jurisprudence. Halmekangas v. ANPAC Louisiana Ins. Co., 11-1293, pp. 6-7 (La.App. 4 Cir. 6/8/12), 95 So.3d 1192, 1196-97, writ denied, 12-1542 (La. 10/12/12), 98 So.3d 873.

. On appeal, Dr. Chapital concedes that the Policy did not provide coverage for the theft claim; thus, only the fire claim is before us.

. In Isidore Newman School v. J. Everett Eaves, Inc., 09-2161, p. 12 (La.7/6/10), 42 So.3d 352, 359, the Louisiana Supreme Court summarized the scope of an agent’s duty as follows:
An agent has a duty of "reasonable diligence” to advise the client, but this duty has not been expanded to include the obligation to advise whether the client has procured the correct amount or type of insurance coverage. It is the insured’s responsibility to request the type of insurance coverage, and the amount of coverage needed. It is not the agent's obligation to spontaneously or affirmatively identify the scope or the amount of insurance coverage the client needs. It is also well settled that it is insured’s obligation to read the policy *84 when received, since the insured is deemed to know the policy contents.

. Indeed, the only agency relationship established by the evidence in the record is between Dr. Chapital and Kelleher.

. Both Citizens and Kelleher represented that until the fire and theft claims were reported, they were unaware that the Property had been vacant since Hurricane Katrina. Kelleher presented the deposition testimony of its customer service representative, Kathleen Zammit; Ms. Zammit testified that until the theft and fire claims were reported, Kelle-her was unaware that the Property was vacant.

. Moreover, as noted earlier, Citizens, in its July 25, 2011 letter rejecting the fire claim, expressly reserved its rights under the Policy. Citizens thus did not waive the coverage defense of the 60-day vacancy period. See Step-tore v. Masco Const. Co., Inc., 93-2064, p. 4 (La.8/18/94), 643 So.2d 1213, 1216 (holding that "[wjaiver occurs when there is an existing right, a knowledge of its existence and an actual intention to relinquish it or conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished.”).

. In Vagelos v. Abramson, 12-1235, pp. 21-22 (La.App. 4 Cir. 10/2/13), 126 So.3d 639, 651, the plaintiffs amended their petition to assert claims of unjust enrichment, attempting to avoid the ramifications of peremption of their legal malpractice claims under La. R.S. 9:5605. The plaintiffs argued that the unjust enrichment claim had not prescribed because it was subject to a ten-year prescriptive period.