| MINDI MAPES AND DONALD | * | NO. 2021-CA-0166 |
|---|---|---|
| MAPES, III, INDIVIDUALLY | | |
| AND ON BEHALF OF THE | * | |
| DECEASED PATIENT, | | COURT OF APPEAL |
| DONALD R. MAPES | * | |
| | | FOURTH CIRCUIT |
| VERSUS | * | |
| | | STATE OF LOUISIANA |
| STATE OF LOUISIANA, | * * * * * * * | |
| THROUGH THE BOARD OF | | |
| SUPERVISORS OF | | |
| LOUISIANA STATE | | |
| UNIVERSITY | | |
| AGRICULTURAL AND | | |
| MECHANICAL COLLEGE ON | | |
| BEHALF OF LOUISIANA | | |
| STATE UNIVERSITY HEALTH | | |
| CARE SERVICES DIVISION; | | |
| UNIVERISTY MEDICAL | | |
| CENTER MANAGEMENT | | |
| CORPORATION, ET AL. | | |

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2019-09159, DIVISION "G-11"
Honorable Robin M. Giarrusso, Judge
* * * * * *
**Judge Daniel L. Dysart**
* * * * * *

(Court composed of Judge Terri F. Love, Judge Roland L. Belsome, Judge Daniel
L. Dysart, Judge Joy Cossich Lobrano, Judge Sandra Cabrina Jenkins)

*LOVE, C.J., DISSENTS AND ASSIGNS REASONS*
*LOBRANO, J., CONCURS IN THE RESULT*

R. Glenn Cater
Amanda C. Graeber
CATER & ASSOCIATES, LLC
631 St. Charles Avenue
New Orleans, LA 70130

    COUNSEL FOR PLAINTIFF/APPELLANT

L. David Adams
C. William Bradley, Jr.
Richard S. Crisler
BRADLEY MURCHISON KELLY & SHEA LLC
1100 Poydras Street, Suite 2700
New Orleans, LA 70163

COUNSEL FOR DEFENDANT/APPELLEE

**REVERSED AND REMANDED**

**MARCH 2, 2022**

This appeal arises out of a medical malpractice action. Plaintiffs-appellants, Mindy Mapes and Donald Mapes, III, the children of the decedent, Donald Mapes, appeal the district court's November 20, 2020, judgment granting the motion for summary judgment of defendant-appellee, University Medical Center Management Corporation ("UMC"). For the following reasons, we reverse the district court's judgment and remand the case for further proceedings consistent with this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

The decedent, Mr. Mapes, had been an inmate at Elayn Hunt Correctional Center ("EHCC"), with a history of medical conditions requiring treatment. On September 8, 2015, Mr. Mapes's deteriorating medical condition led to his transfer from EHCC to UMC. His initial primary complaint was a kidney stone. He was treated at UMC by UMC and LSU Health Science Center ("LSUHSC") staff. While at UMC, doctors ordered a Complete Blood Count ("CBC") test, which indicated Mr. Mapes's platelet count was 25. This platelet level fell well below the normally accepted range and triggered UMC's protocol for critical value

notification which requires that the laboratory verbally inform the nurse and that the nurse verbally inform the doctor of the discrepancy. Mr. Mapes's nurse was notified of the platelet count at approximately 5:30 p.m. on September 8, 2015. However, the record does not contain any indication that the UMC nurse then verbally notified the doctor. Approximately twelve hours later, on September 9, 2015, Mr. Mapes was discharged back to EHCC. Mr. Mapes's condition worsened, which resulted in his transfer to St. Elizabeth Hospital, and thereafter to Our Lady of the Lake Hospital. Test results at St. Elizabeth's and Our Lady of the Lake, respectively, showed multiple zones of brain hemorrhaging and petechial hemorrhaging. Mr. Mapes died on September 11, 2015. The recording physician noted several ailments, including intracerebral hemorrhage (bleeding of the brain), hepatitis C virus, multisystem organ failure, and shock.

Plaintiffs filed a complaint before the Medical Review Panel ("MRP") against EHCC, LSUHSC, and UMC for medical malpractice in transferring and failing to properly treat, assess, diagnose, and monitor Mr. Mapes. The MRP convened on May 23, 2019, and issued the following findings:

> **As to University Medical Center Management Corp. d/b/a University Medical Center:**
>
> The panel finds that the medical record reflects that a nurse was told by the lab that the patient's platelet was critically low. The nurse had an obligation to *verbally* report to the attending physician about that lab value, [sic] the nurse's failure to do so constitutes a breach of the standard of care. Otherwise, the nursing care was appropriate. It is unlikely that a verbal report would have changed the patient's outcome.

**As to Salvadore Suau, M.D.[1]:**

The panel finds that he breached the standard of care. It appears from his notes that he was not aware of the low platelet count meaning that he had not checked the lab result prior to termination of his care and recommendation for discharge. It was also a breach to not repeat the CBC either at UMC or recommended [sic] it in the transfer order back to the receiving facility. It is unlikely that followup [sic] would have changed the patient's ultimate outcome.

In light of the MRP findings, Plaintiffs timely filed the present suit against EHCC, LSUHSC, and UMC. In response, all the defendants, including UMC, filed motions for summary judgment. Each Defendant alleged that Plaintiffs would be unable to prove that the breach of the standard of care was the proximate cause of Mr. Mapes's death. The district court granted UMC's motion and denied the summary judgment motions of both EHCC and LSUHSC.

Plaintiffs timely appealed the judgment granting UMC's motion, asserting that the trial court "erred by granting summary judgment in favor of UMC where UMC failed to meet its summary-judgment burdens with appropriate evidence establishing no genuine issues of material fact remained disputed as to causation of damages and that it was entitled to summary judgment under the substantive law."

## STANDARD OF REVIEW

"Appellate courts review judgments granting or denying motions for summary judgment *de novo* using the same criteria district courts consider when determining if summary judgment is proper." *Fertitta v. Regions Bank*, 20-0300, p. 9 (La. App. 4 Cir. 12/9/20), 311 So. 3d 445, 452.

## DISCUSSION

*SUMMARY JUDGMENT*

---

[1] Dr. Suau is a LSUHSC emergency room physician who treated Decedent at UMC.

3

"The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969." La. C.C.P. art. 966(A)(2). "The procedure is favored and shall be construed to accomplish these ends." *Id*. "[A] motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(A)(3). "The only documents that may be filed in support of or in opposition to the motion are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions." La. C.C.P. art. 966(A)(4).

"The burden of proof rests with the mover." La. C.C.P. art. 966(D)(1). However, "if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden . . . does not require him to negate all essential elements of the adverse party's claim, action, or defense." *Id*. Instead, the moving party must "point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense." *Id*. Then, "[t]he burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law." *Id*.

"A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue, and summary judgment is appropriate." *Maddox v. Howard Hughes Corp.*, 19-0135, p. 5 (La. App. 4 Cir. 4/17/19), 268 So. 3d 333, 337. "A fact is material when its existence or nonexistence may be essential to the plaintiffs [sic] cause of action under the applicable theory of recovery; a fact is material if it

4

potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute." *Id.* (quoting *Chapital v. Harry Kelleher & Co., Inc.*, 13-1606, p. 5 (La. App. 4 Cir. 6/4/14), 144 So. 3d 75, 81). "Whether a fact is material is a determination that must be made based on the applicable substantive law." *Maddox*, 19-0135, p. 5, 268 So. 3d at 337.

UMC's Motion for Summary Judgment arose within the context of a medical malpractice action. In order to recover in a medical malpractice claim, La. R.S. 9:2794 requires that a plaintiff prove by a preponderance of the evidence: (i) the standard of care applicable to defendant; (ii) defendant's breach of the standard of care; and (iii) the existence of a causal connection between the breach and the resulting injury. "Expert testimony is generally required to establish the applicable standard of care and whether or not that standard was breached, except where the negligence is so obvious that a lay person can infer negligence without the guidance of expert testimony." *Samaha v. Rau*, 07-1726, p. 5 (La. 2/26/08), 977 So. 2d 880, 884.

"A defendant-health care provider does not have the burden of disproving medical malpractice; rather, a defendant-health care provider only must point out that the plaintiff cannot support his claim." *Jordan v. Cmty. Care Hosp.*, 19-0039, p. 12 (La. App. 4 Cir. 7/24/19), 276 So. 3d 564, 576. "Once a defendant-health care provider has established an absence of factual support for an essential element of the plaintiff's claim, the plaintiff must come forth with evidence to preclude summary judgment." *Id.*

UMC's Motion for Summary Judgement argues that Plaintiffs could not support their claim as to the element of causation. To support this assertion, UMC provided the medical review panel opinion and the affidavit of Robert Baudauin,

5

the MRP attorney chairman, attesting to the authenticity of the medical review panel opinion. In response to Plaintiffs' opposition, UMC provided additional portions of Dr. Jenna Jordan's deposition.[2] UMC avers that the evidence provided in support of its Motion for Summary Judgment effectively shifted the burden of proof to Plaintiffs; that Plaintiffs failed to produce sufficient evidence of a material factual dispute; and that the granting of summary judgment was mandated as a result. We disagree.

The MRP opinion does not establish an absence of factual support for the element of causation. The opinion states that "it is unlikely that a verbal report would have changed the patient's outcome." The plain language of that statement is inconclusive as to causation. The MRP actually indicates that a verbal report quite possibly could have changed Mr. Mapes's result. The MRP also found that UMC breached the standard of care when UMC's nurse failed to verbally report Mr. Mapes's platelet level to the attending physician. But for this breach, the physician would have been immediately prompted to re-order the Critical Blood Count (CBC) lab test to further assess Mr. Mapes' platelets and to develop a course of necessary medical action. The MRP found that the physician's failure to re-administer the CBC constituted yet another breach of the standard of care, even though the physician testified that he would not have altered the course of action had a verbal notification been received. Therefore, we believe that the MRP opinion fails to demonstrate that Plaintiffs lacked evidence of a causal relationship between UMC's breach and Mr. Mapes's death, and the burden of proof was not shifted to Plaintiffs based on the findings of the MRP.

---

[2] Dr. Jordan served as a member of the MRP.

Dr. Jordan's deposition also fails to shift the burden of proof to Plaintiffs. In fact, much of Dr. Jordan's testimony supports the Plaintiffs' theory of causation. Dr. Jordan confirmed that the primary concern associated with a critically low platelet level is the potential for spontaneous bleeding. Dr. Jordan continued by explaining that a level less than ten could trigger such a bleed, and that even though Mr. Mapes's platelet level was twenty-five at the time the initial CBC test was conducted at UMC, his abnormally low count should have triggered an immediate investigation and an immediate repeat of the CBC, at the very least. According to Dr. Jordan, the purpose of repeating the CBC is to determine whether the platelet level is actively dropping and, if so, to determine how urgent the need to act is going forward. The CBC lab test was never repeated at UMC, and the subsequent CBC results from EHCC and St. Elizabeth's returned platelet levels of nine and eight, respectively, indicating that Mr. Mapes' platelet level exhibited a substantial downward trend. St. Elizabeth's followed up with a CT scan which showed Mr. Mapes sustained several small hemorrhages and one larger area of bleeding in the right frontal region of his brain. Mr. Mapes's death certificate lists subarachnoid hemorrhage as the cause of death and Dr. Jordan concurred that in this case the low platelet count was related to the hemorrhage. Given the foregoing facts, we find that Dr. Jordan's testimony failed to establish Plaintiffs' lack of factual support for the element of causation and that the burden of proof remained with UMC.

However, even if this court were to find UMC's Motion for Summary Judgment sufficient to shift the burden of proof to Plaintiffs, we find that the evidence Plaintiffs provided in support of their claim demonstrates that genuine issues of material fact exist and that summary judgment was improper.

Plaintiffs opposed the summary judgment with 1) UMC medical records, 2) excerpts from Dr. Jenna Jordan's deposition, 3) EHCC records, 4) St. Elizabeth records, 5) Mr. Mapes' death certificate, and 6) the affidavit of Dr. James Lauridson. The district court concluded that this evidence was insufficient to satisfy the Plaintiffs' burden on summary judgment. We disagree. Taken as a whole, these documents demonstrate that Plaintiffs will be able to meet their evidentiary burden at trial. The UMC records indicate that Mapes's initial lab test returned a critically low platelet level. Dr. Jordan testified that such an abnormally low platelet count should have triggered a verbal notification to the treating physician to conduct a more thorough assessment and re-order the patient's labs, at a minimum. EHCC records show that Mapes's condition continued to deteriorate after he was discharged from UMC. Records from St. Elizabeth's reveal that Mapes's platelet level declined drastically after the initial CBC was conducted at UMC. Mr. Mapes's cause of death was listed as intracerebral hemorrhage (bleeding of the brain) on his death certificate. Finally, Dr. Lauridson's affidavit stated that "Mr. Mapes had documented thrombocytopenia and prolonged coagulation issues [related to low platelet counts]… Had [he] received treatment for these conditions, there was a greater chance than not, that he would not have suffered fatal brain hemorrhage." Thus, we find that Plaintiffs have sufficiently established the existence of genuine issues of material fact that preclude summary judgment.

## DECREE

For the reasons expressed above, the judgment of the district court granting summary judgment in favor of UMC is hereby reversed, and this case is remanded to the trial court for further proceedings consistent with this opinion.

**REVERSED AND REMANDED**