| JUSTIN CROWLEY | * | NO. 2019-CA-0643 |
| VERSUS | * | |
| | | COURT OF APPEAL |
| GOAUTO INSURANCE COMPANY, BRIONNE L. MYLES, AND PROGRESSIVE PALOVERDE INSURANCE COMPANY | * | FOURTH CIRCUIT |
| | * | |
| | * | STATE OF LOUISIANA |
| | * * * * * * * | |

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2017-11896, DIVISION "L"
Honorable Kern A. Reese, Judge
* * * * * *
**Judge Tiffany G. Chase**
* * * * * *
(Court composed of Judge Edwin A. Lombard, Judge Sandra Cabrina Jenkins, Judge Tiffany G. Chase)

R. Brent Cueria
CUERIA LAW FIRM, L.L.C.
700 Camp Street, Suite 316
New Orleans, LA 70130

    COUNSEL FOR PLAINTIFF/APPELLANT

Dianna Duffy Willem
Charles V. Giordano
Michael E. Escudier
HEBBLER & GIORDANO, L.L.C.
3501 N. Causeway Blvd., Suite 400
Metairie, LA 70002

    COUNSEL FOR DEFENDANT/APPELLEE

Karen M. Dicke
LEWIS, BRISBOIS, BISGAARD & SMITH, L.L.P.
400 Poydras Street, Suite 1300
New Orleans, LA 70130

    COUNSEL FOR DEFENDANT/APPELLEE

                             **AFFIRMED**
                **NOVEMBER 27, 2019**

The plaintiff, Justin Crowley (hereinafter "Mr. Crowley"), appeals the trial court's judgment granting a motion for summary judgment in favor of defendant, Progressive Paloverde Insurance Company (hereinafter "Progressive"), on the basis that Progressive's insurance policy excludes coverage for plaintiff's alleged damages. After consideration of the record before this Court, and the applicable law, we affirm the judgment of the trial court.

## FACTUAL AND PROCEDURAL HISTORY

This case arises from a motor vehicle accident which occurred on September 20, 2017, wherein Mr. Crowley sustained personal injuries when he was allegedly rear-ended by defendant, Brionne Myles (hereinafter "Ms. Myles"). At the time of the accident, Mr. Crowley was working in his capacity as a Lyft driver and logged on to the Lyft ride-sharing application waiting for a ride request. Mr. Crowley was insured as a resident driver under a Progressive automobile policy issued to his wife, Juliette Crowley. The policy provided uninsured/underinsured motorist coverage (hereinafter "UM") with limits of $100,000 for each person and $300,000 for each accident.

1

Mr. Crowley filed a petition for damages against Ms. Myles, her insurer Go Auto Insurance Company; and his insurer, Progressive, seeking UM coverage. Mr. Crowley subsequently amended his petition to assert an additional claim for UM coverage against Lyft's insurer, Steadfast Insurance Company.

On July 23, 2018, Progressive filed a motion for summary judgment arguing that its policy excludes coverage for Mr. Crowley's UM claims. Specifically, Progressive avers that Mr. Crowley was engaged in ride-sharing activities, an excluded activity under the UM policy. In support of its motion for summary judgment, Progressive submitted deposition testimony of Mr. Crowley wherein he acknowledged, at the time of the accident, that he was logged on to the Lyft application, searching for a passenger near the New Orleans Convention Center. Progressive also introduced a certified copy of the insurance policy. Mr. Crowley opposed the motion for summary judgment urging the trial court to find that the exclusion violates public policy. He argues that the law favors coverage under an insurance policy and that the exclusion adversely affects his ability to receive complete reparation for his damages. Moreover, Mr. Crowley notes that Progressive failed to establish the procedural requirements for a knowing waiver of UM coverage. After a hearing, the trial court granted Progressive's motion for summary judgment and dismissed Mr. Crowley's claims against Progressive, with prejudice. This appeal followed.

## STANDARD OF REVIEW

Whether an insurance policy provides or excludes coverage as a matter of law is an issue that can be resolved by summary judgment. *Chapital v. Harry Kelleher & Co., Inc.*, 2013-1606, p. 6 (La.App. 4 Cir. 6/4/14), 144 So.3d 75, 82 (quoting *Orleans Parish Sch. Bd. v. Lexington Ins. Co.*, 2012–1686, p. 9 (La.App.

2

4 Cir. 6/5/13), 118 So.3d 1203, 1212). Likewise, when summary judgment is granted in the context of statutory interpretation, a reviewing court is presented with a question of law which is subject to *de novo* review. *Billeaudeau v. Opelousas Gen. Hosp. Auth.*, 2016-0846, pp. 9-10 (La. 10/19/16), 218 So.3d 513, 520.

## DISCUSSION

In his sole assignment of error, Mr. Crowley argues the exclusion of UM coverage in a personal automobile insurance policy issued to an owner or operator of a vehicle, when that individual is engaged in ride-sharing activity, is against established public policy. In support of this position, Mr. Crowley relies on this Court's decision in *Jean v. James River Ins. Co.*, 2019-0041, p.5 (La.App. 4 Cir. 5/29/19), 274 So.3d 43, 46; wherein this Court held that a transportation network company (hereinafter "TNC") is permitted to reject UM coverage when all of the formalities are satisfied. Mr. Crowley submits that the trial court's ruling in this case, coupled with the holding of *Jean*, places drivers in an untenable situation potentially leaving drivers without UM coverage. Mr. Crowley also argues that since a TNC is required to reject UM coverage and adhere to the formal requirements of La. R.S. 22:1295(1)(a)(ii), the same formalities should likewise apply when an insurer, under a personal insurance policy, seeks to exclude UM coverage for ride-sharing activity. *See Duncan v. U.S.A.A. Ins. Co.*, 2006-0363, pp. 11-13 (La. 11/29/06), 950 So.2d 544, 551 (setting out the six requirements for a valid rejection of UM coverage).

This case presents two issues for our determination. While we must ultimately determine whether the trial court erred in granting Progressive's motion for summary judgment finding that coverage was excluded under the insurance

3

policy, we do so while also considering Mr. Crowley's argument that the exclusion violates public policy.

In analyzing insurance policies, certain legal principles apply. First and foremost is the rule that an insurance policy is a contract between the parties and should be construed using the general rules of interpretation of contracts set forth in the Civil Code. *Edwards v. Daugherty*, 2003–2103, p. 11 (La. 10/1/04), 883 So.2d 932, 940 (citing *Cadwallader v. Allstate Insurance Co.*, 2002–1637, p. 3 (La. 6/27/03), 848 So.2d 577, 580). According to those rules, the responsibility of the judiciary in interpreting insurance contracts is to determine the parties' common intent. *Id.* (citing La. C.C. art. 2045). Courts begin their analysis of the parties' common intent by examining the words of the insurance contract itself. *See* La. C.C. art. 2046; *Blackburn v. National Union Fire Ins. Co. of Pittsburgh*, 2000–2668, p. 6 (La. 4/3/01), 784 So.2d 637, 641 ("[T]he initial determination of the parties' intent is found in the insurance policy itself."). In ascertaining the common intent, words and phrases in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning, in which case the words must be ascribed their technical meaning. *See* La. C.C. art. 2047.

The relevant portion of the Progressive policy provides, in pertinent part:

**EXCLUSIONS – READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART III.**

Coverage under this Part III will not apply:

\* \* \*

4

6. [t]o **bodily injury** sustained by any person while using or **occupying** a **covered auto**, a **rental auto**, or a **temporary substitute auto** while being used for **ride-sharing activity**.[1]

A clear reading of the policy language reveals that any bodily injury sustained while using or occupying a covered auto while engaging in ride-sharing activities are excluded. No further interpretation of the clear and unambiguous language is required. The policy constitutes the law between Mr. Crowley and Progressive as well as the nature of their relationship and what obligations are owed is governed by that agreement.

An insured is deemed to know the contents of their insurance policy. *See Chapital*, 2013-1606, p. 8, 144 So.3d at 83. This includes any exclusions limiting potential coverage. Thus, we find that the trial court did not err in finding Progressive's policy did not afford coverage for the UM claims asserted by Mr. Crowley. However, it is significant to note that Mr. Crowley does not rest his argument solely on the fact that the policy language is ambiguous, rather he contends that the inclusion of the ride-sharing use exclusion in the policy, without adherence to the formal requirements of La. R.S. 22:1295(1)(a)(ii), violates public policy.

In 2015, the Louisiana Legislature enacted Section 1 of Acts 2015, No. 266 effective January 1, 2016, adding Part C, and designated it as the "Transportation

---

[1] The definitions section of the policy defines "ride-sharing activity" as:

> [t]he use of any vehicle to provide transportation of persons or property in connection with a transportation network company from the time a user logs on to, or signs in to any online-enabled application, software, website or system until the time the user logs out of, or signs off of, any such online-enabled application, software, website or system, whether or not the user has accepted any passenger(s) or deliver assignment, including the time the user is on the way to pick up any passenger(s) or property, or is transporting any passenger(s) or property.

Network Company Motor Vehicle Responsibility" act. Contained within this new provision is La. R.S. 45:201.7 which expressly allow insurers to exclude UM coverage in policies issued to an owner or operator of a personal vehicle when a driver is engaged in ride-sharing activity. La. R.S. 45:201.7 provides:

> (A)(1) Insurers that write automobile insurance in this state may exclude any or all coverage afforded under the policy issued to an owner or operator of a personal vehicle for any loss or injury that occurs while a driver is logged on to a transportation network company's digital network during the pre-trip acceptance period or while a driver is engaged in a prearranged ride. This right to exclude coverage shall apply to any or all coverage in an automobile insurance policy including but not limited to:
>
> (a) Liability coverage for bodily injury.
> (b) Liability coverage for property damage.
> **(c) Uninsured and underinsured motorist coverage.**
> (d) Medical payments coverage.
> (e) Comprehensive physical damage coverage.
> (f) Collision physical damage coverage.
>
> (2) The exclusions permitted in this Subsection shall apply notwithstanding any requirement under the Motor Vehicle Safety Responsibility Law, R.S. 32:851 et seq. or other laws. Nothing in this Section implies or requires that a personal automobile insurance policy provide coverage while the driver is logged on to the transportation network company's digital network during the pre-trip acceptance period, while the driver is engaged in a prearranged ride, or while the driver otherwise uses a vehicle to transport passengers for compensation.
>
> (3) Nothing in this Part shall be deemed to preclude an insurer from providing coverage for the transportation network company driver's vehicle, if it chooses to do so by contract or endorsement.
>
> [Emphasis added]

Mr. Crowley concedes that La. R.S. 45:201.7 permits an insurer to exclude UM coverage. However, he submits that this provision conflicts with the strong public policy favoring UM coverage unless knowingly waived. Moreover, he argues that an insurer should not be permitted to simply include an exclusion for UM

6

coverage, rather the exclusion of UM coverage should be "unmistakable and knowing" and in conformity with the requirements set forth in La. R.S. 22:1295(1)(a)(ii).

In Louisiana, UM coverage is provided for by statute and embodies a strong public policy. *Roger v. Estate of Moulton*, 513 So.2d 1126, 1130 (La. 1987). The object of UM insurance is to provide full recovery for automobile accident victims who suffer damages caused by a tortfeasor who is not covered by adequate liability insurance. *Tugwell v. State Farm Ins. Co.*, 609 So.2d 195, 197 (La.1992) (citing *Hoefly v. Government Employees Ins. Co.*, 418 So.2d 575, 578 (La.1982)). The original UM statute, adopted by 1962 La. Acts No. 187, required UM coverage in every automobile liability insurance policy issued in Louisiana, in an amount not less than the limits mandated by law for bodily injury damages. *Duncan*, 2006-0363, p. 5, 950 So.2d at 547-48. The UM statute was amended several times since its inception. In 1977, La. Acts No. 438 specifically required that the rejection of UM coverage be in writing. Thereafter, in 1987, La. Acts No. 436, La. R.S. 22:1406 was amended to require that any rejection or selection of lower limits shall be made only "on a form designed by each insurer." In *Tugwell*, 609 So.2d at 197, our Supreme Court held that the form used by the insurance company must give the applicant the opportunity to make a "meaningful selection" from his options provided by the statute: (1) UM coverage equal to bodily injury limits in the policy; (2) UM coverage lower than bodily injury limits in the policy; or (3) no UM coverage. The current version of the UM statute that allows for a rejection of UM coverage is codified in La. R.S. 22:1295(1)(a)(ii) which provides:

> Such rejection, selection of lower limits, or selection of economic-only coverage shall be made only on a form prescribed by the commissioner of insurance. The **prescribed form shall be provided**

7

**by the insurer and signed by the named insured or his legal representative. The form signed by the named insured or his legal representative which initially rejects such coverage, selects lower limits, or selects economic-only coverage shall be conclusively presumed to become a part of the policy or contract when issued and delivered, irrespective of whether physically attached thereto**. A properly completed and signed form creates a rebuttable presumption that the insured knowingly rejected coverage, selected a lower limit, or selected economic-only coverage. The form signed by the insured or his legal representative which initially rejects coverage, selects lower limits, or selects economic-only coverage shall remain valid for the life of the policy and shall not require the completion of a new selection form when a renewal, reinstatement, substitute, or amended policy is issued to the same named insured by the same insurer or any of its affiliates. An insured may change the original uninsured motorist selection or rejection on a policy at any time during the life of the policy by submitting a new uninsured motorist selection form to the insurer on the form prescribed by the commissioner of insurance. Any changes to an existing policy, regardless of whether these changes create new coverage, except changes in the limits of liability, do not create a new policy and do not require the completion of new uninsured motorist selection forms. For the purpose of this Section, a new policy shall mean an original contract of insurance which an insured enters into through the completion of an application on the form required by the insurer.

[Emphasis added]

Mr. Crowley submits that La. R.S. 45:201.7 effectively negates the requirements of La. R.S. 22:1295(1)(a)(ii) and is against public policy.

The Legislature is presumed to have enacted a statute in light of the preceding statutes involving the same subject matter and court decisions construing those statutes, and where the new statute is worded differently from the preceding statute, the Legislature is presumed to have intended to change the law. *Fontenot v. Reddell Vidrine Water Dist.*, 2002–0439, 2002–0442, 2002–0478, pp. 13–14 (La. 1/14/03), 836 So.2d 14, 24. Where two statutes deal with the same subject matter, they should be harmonized if possible, as it is the duty of the courts, in the construction of statutes, to harmonize and reconcile laws. *Oubre v. Louisiana*

*Citizens Fair Plan*, 2011-0097, p. 12 (La. 12/16/11), 79 So.3d 987, 997. However, "the statute specifically directed to the matter at issue must prevail as an exception to the statute more general in character." *McGlothlin v. Christus St. Patrick Hosp.*, 2010-2775, p. 12 (La. 7/1/11), 65 So.3d 1218, 1228; *see also M.J. Farms, Ltd. v. Exxon Mobil Corp.*, 2007-2371, pp. 13-14 (La. 7/1/08), 998 So.2d 16, 27 ("legislative language will be interpreted on the assumption the Legislature was aware of existing statutes … and with knowledge of the effect of their acts and a purpose in view."). The exclusion provided for in La. R.S. 45:201.7, pertaining to "automobile insurance provisions" under the Transportation Network Company Motor Responsibility Vehicle Act supersedes the general requirements of La. R.S. 22:1295(1)(a)(ii) contained in the "INSURANCE AND CONTRACT REQUIREMENTS IN GENERAL."[2]

We find no absurd or inequitable result as the legislation does not "preclude an insurer from providing coverage for the [TNC] driver's vehicle, if it chooses to do so by contract or endorsement." La. R.S. 45:201.7(A)(3). The legislature specifically contemplated a situation such as the one *sub judice* by allowing a TNC driver to negotiate with their insurer for UM coverage during ride-sharing activity. *See McGlothlin*, 2010-2775, p. 11, 65 So.3d at 1228 ("courts are bound … to give effect to all parts of a statute and to construe no sentence, clause, or word as meaningless and surplusage if a construction giving force to and preserving all words can legitimately be found"). In keeping with the declared findings of the legislature, La. R.S. 45:201.7(A)(3) shifts the responsibility of acquiring UM coverage for ride-sharing activity under personal insurance policies to TNC drivers. *See* La. R.S. 45:201.12 (the TNC Statute shall be construed "to exact strict

---

[2] *See e.g.* La. R.S. 22:1261, *et seq.*

9

compliance by [TNCs] and their participating drivers with the requirements of R.S. 45:201.5 through 45: 201.9"); La. R.S. 45:201.2 ("regulation and control [shall] be exercised over the operation of [TNCs] *and their participating drivers to ensure their responsibility* in order that the paramount interest of the public be protected") (emphasis added). As a Lyft driver, Mr. Crowley is not precluded from obtaining UM coverage for his ride-sharing activities.

Public policy is set by the legislature in enacting statutes. *See M.J. Farms*, 2007-2371, pp. 16-17, 998 So.2d at 29; *Krielow v. Louisiana Dept. of Agric. & Forestry*, 2013-1106, pp. 4-5, 125 So.3d 384, 388 (only our state constitution limits "the otherwise plenary power of the people exercised through the legislature"). The paramount consideration in statutory interpretation is ascertainment of the legislative intent but the starting point in interpretation is the language of the statute itself. *See M.J. Farms*, 2007-2371, p. 13, 998 So.2d at 27. "When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature." La. C.C. art. 9. Only when the language of a statute is ambiguous should courts resort to general public policy in an attempt to divine the intent of the legislature. *See M.J. Farms*, 2007-2371, p. 13, 998 So.2d at 27; *Gulf Oil Corp. v. State Mineral Bd.*, 317 So.2d 576, 586 (La. 1974) (on rehearing). Such is not the case here. "It is not the prerogative of the judiciary to disregard public policy decisions underlying legislation or to reweigh balances of interests and policy considerations already struck by the legislature." *Progressive Sec. Ins. Co. v. Foster*, 1997-2985, p. 21 (La. 4/23/98), 711 So.2d 675, 688. "What the law ought to be is not a juristic question, but is a matter which

10

addresses itself solely to the Legislature of the state." *Carpenter v. Metropolitan Life Ins. Co.*, 182 La. 813, 820, 162 So. 630, 632 (1935).

We find the trial court did not err in granting Progressive's motion for summary judgment. We likewise reject Mr. Crowley's argument that the trial court's application of La. R.S. 45:201.7, absent the formal requirements of La. R.S. 22:1295(1)(a)(ii), violates public policy.

## DECREE

For the foregoing reasons, the judgment of the trial court granting summary judgment in favor of Progressive is affirmed.

**AFFIRMED**