| | | |
|---|---|---|
| **DANIEL HARRIS** | * | **NO. 2024-CA-0800** |
| **VERSUS** | * | |
| | | **COURT OF APPEAL** |
| **BOH BROS. CONSTRUCTION** | * | |
| **CO., LLC AND ABC** | | **FOURTH CIRCUIT** |
| **INSURANCE COMPANY** | * | |
| | | **STATE OF LOUISIANA** |

* * * * * * *

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2017-03303, DIVISION "M"
Honorable Paulette R. Irons, Judge
* * * * * *
**Judge Nakisha Ervin-Knott**
* * * * * *

(Court composed of Judge Rachael D. Johnson, Judge Karen K. Herman, Judge
Nakisha Ervin-Knott)

John Richards
RICHARDS LAW LLC
6508 Fleur De Lis Dr.
New Orleans, LA 70124


        COUNSEL FOR PLAINTIFF/APPELLANT


Michael R. C. Riess
Robert W. Tschirn
Emilia W. Duncan
RIESS LEMIEUX, LLC
1100 Poydras Street, Suite 1100
New Orleans, LA 70163


        COUNSEL FOR DEFENDANT/APPELLEE

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED;
ANSWER TO APPEAL DENIED
SEPTEMBER 16, 2025**

Appellant, Daniel Harris ("Mr. Harris"), seeks review of the district court's October 26, 2023 judgment denying his *Daubert* motions in limine and granting Boh Bros. Construction, LLC's ("Boh Bros.") motion for summary judgment. For the reasons that follow, we affirm the district court's judgment as it relates to Mr. Harris' *Daubert* motions in limine; reverse the district court's judgment as it relates to Boh Bros.'s motion for summary judgment; remand the matter to the district court for further proceedings; and deny the answer to appeal.

## FACTUAL BACKGROUND

This case has been before this Court previously, and the underlying facts were articulated as follows:

> Boh Bros. entered into a contract with the United States Government Army Corps of Engineers (the "Corps") to work on the Southeast Louisiana Urban Flood Control Project (the "Project") in the uptown area of New Orleans, Louisiana. The Project was initiated by the Corps to address flooding in Southeast Louisiana. The Corps provided the plans and specifications for the Project. The contract provided that a concrete canal, which was comprised of a fifteen-feet deep box culvert, be built underneath Louisiana Avenue that spanned from Constance Street to South Claiborne Avenue. The walls of the culvert were to be lined with a steel retaining wall with a minimum height of three feet (36 inches) above the existing grade to give protection against falls into the culvert. According to Boh Bros., it installed the steel retaining wall at a height of 42 inches above the existing grade, exceeding the

1

minimum requirement of 3 feet. Boh Bros. also contended that the specifications required a minimum of a six-foot chain-linked fence be built around the neutral ground of Louisiana Avenue.

On the evening of April 8, 2016, Mr. Harris, who is legally blind, was in the New Orleans uptown area near Louisiana Avenue visiting his stepdaughter. After staying a few hours at his stepdaughter's house, Mr. Harris walked to a near-by store, assisted by a neighborhood friend. At some point, the friend left Mr. Harris at the store. The store was in a location where Mr. Harris was not required to cross the street to get to his stepdaughter's home.

The next morning, on April 9, 2016, Boh Bros.' personnel found Mr. Harris inside the fence, lying at the bottom of a box culvert located in the neutral ground on Louisiana Avenue between South Robertson Street and Freret Street. To enter the construction site in the area where Mr. Harris was found, Mr. Harris had to cross the street from his location at the store.

Mr. Harris suffered injuries as a result of his fall. Mr. Harris could not recall how he got into the culvert.

*Harris v. Boh Bros. Constr. Co., LLC*, 2020-0248, pp. 1-2 (La. App. 4 Cir. 5/26/21),

322 So.3d 397, 400-01 ("*Harris II*").

## PROCEDURAL HISTORY

The following procedural history was provided in *Harris II*:

Mr. Harris filed a petition and an amended petition for damages against Boh Bros. Mr. Harris alleged Boh Bros. was negligent, asserting, in pertinent part: "Plaintiff was walking home, and walked through the unsecured construction site that was maintained by BOH BROS. CONSTRUCTION CO. L.L.C. when he fell fifteen (15) to twenty (20) feet at the premises. The accident caused personal injury to Plaintiff." In response, Boh Bros. answered the petition and pled affirmative defenses.

Following, Boh Bros. moved for summary judgment, and for the first time asserted the affirmative defense of government contractor immunity, pursuant to *Boyle v. United Techs. Corp.*, 487 U.S. 500, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988) (hereinafter referred to as "*Boyle*"). In addition, Boh Bros. alleged that Mr. Harris could not prove the elements of breach of duty and causation as to his negligence claim. The district court granted the motion for summary judgment as to these issues and provided written reasons. From this judgment, Mr. Harris appealed.

2

This Court, after a *de novo* review, concluded that there were genuine issues of material facts remaining, which precluded summary judgment on both grounds. *Harris*, [20]20-0248, ___ So.3d at ___, 2020 WL 8455801, *1 ["*Harris I*"]. Specifically, this Court determined that Boh Bros. failed to meet the first prong of *Boyle*—that the government approved of reasonably precise plans and specifications regarding the fencing surrounding the construction site. The record before this Court reflected that Boh Bros. *did not* submit with its motion for summary judgment a copy of the plans and specifications and/or contract approved by the Corps, regarding the fencing surrounding the construction site. *Id.*, [20]20-0248, ___ So.3d at ___, 2020 WL 8455801, at *9. This Court pretermitted discussion of the other two prongs of the *Boyle* test. This Court also determined that Boh Bros. failed to show an absence of factual basis to support Mr. Harris' negligence claim, as there were genuine issues of material fact remaining. *Id.*, [20]20-0248, ___ So.3d at ___, 2020 WL 8455801, at *11-12. As a result, this Court reversed the district court's January 10, 2020 judgment, and the matter was remanded to the district court for further proceedings. *Harris*, [20]20-0248, ___ So.3d at ___, 2020 WL 8455801, at *12. Boh Bros. sought review by the Supreme Court.

In its writ application to the Supreme Court, Boh Bros., for the first time, asserted that Mr. Harris made two judicial confessions: (1) the first prong of the *Boyle* test was met; and (2) the hazard was open and obvious. Boh Bros. urged that, as a result, it was relieved of proving the first prong of the *Boyle* test, and it owed no duty to Mr. Harris.

The Supreme Court, in a *per curiam*, granted Boh Bros. relief, in part, writing:

> The court of appeal reversed, finding defendant failed to meet the first requirement of *Boyle*-that the government approve reasonably precise specifications. Specifically the court pointed to defendant's failure to submit a copy of the plans and specifications approved by the Army Corps of Engineers. However, *a filing* [Plaintiff's Supplemental and Amending Motion in Opposition to Defendant's Motion for Summary Judgment] *before the trial court* indicated the "Plaintiff does not dispute the first prong of the Affirmative Defense of Governmental Contractor Immunity applies. Thus, there is no need to discuss that issue as clearly the government approved the specifications."
>
> An admission by a party in a judicial proceeding is a judicial confession and is full proof against the party making it. La. Civ. Code art. 1853; *C.T. Traina, Inc. v. Sunshine Plaza, Inc.*, 2003-1003, (La. 12/3/03), 861 So.2d 156, 159. This admission "has the effect of waiving

3

evidence as to the subject of the admission-of withdrawing the subject matter of the confession from issue." *Cichirillo v. Avondale Indus., Inc.*, 2004-2894, (La. 11/29/05), 917 So.2d 424, 429 (citing *Cheatham v. City of New Orleans*, 378 So.2d 369, 375 (La. 1979)). Plaintiff's admission removed the first requirement of *Boyle* from issue. The court of appeal erred in denying defendant immunity on this ground.

[W]e remand to the court of appeal to complete its review of defendant's government contractor immunity claim.

*Harris v. Boh Bros. Constr. Co.*, 21-00084, pp. 2-3 (La. 3/16/21), 312 So.3d 565, 566-67 (emphasis added).

Justice Griffin dissented, and Justice Genovese wrote that he would deny the writ and allow the matter to go to trial, explaining in part:

I must say that I am intrigued and perplexed at defendant's "open hazard" defense. Defendant claims that a risk is not unreasonable if it is open and obvious, citing jurisprudence in support of its theory. Query: How can a completely blind person be subjected to the "open and obvious" test? I find the court of appeal decision was correct and would deny this writ for two reasons: first, there are genuine issues of material fact as to defendant's entitlement to immunity; and second, a completely blind man cannot be held to the "open and obvious" legal concept because he is completely blind and can neither see nor discern an open and obvious hazard.

*Harris*, 21-00084, pp. 1-2, 312 So.3d at 567.

*Harris II*, 2020-0248, pp. 2-6, 322 So.3d at 401-04.

On remand, in *Harris II,* this Court addressed Mr. Harris' assigned error that the trial court erred in granting summary judgment in favor of Boh Bros. and made the following conclusions:

- As to the second prong of the *Boyle* test – requiring a government contractor to have performed the work in accordance with the approved specifications – "there are genuine issues of material fact as to whether the fencing conformed to the Corps' plans and specifications." *Id.* at pp. 16-17, 322 So.3d at 410.

4

- Boh Bros. had a duty to Mr. Harris to maintain a secure fence encompassing the construction site. *Id.* at p. 21, 322 So.3d at 412-13.

- This case involves "case-specific factual issues," precluding summary judgment "as to the open and obvious to all defense." *Id.* at p. 24, 322 So.3d at 414.

- "Boh Bros. failed to present evidence to show personal knowledge that the fence was properly maintained and secured" on the day of the incident and therefore, "failed to prove an absence of factual support for the element of causation." *Id.* at p. 25, 322 So.3d at 415.

- "Boh Bros. failed to prove an absence of factual support that Mr. Harris' injuries were not easily associated with the duty to sought to be enforced, *i.e.*, whether the fence was properly secured." *Id.* at p. 26, 322 So.3d at 415.

- Mr. Harris was injured due to falling into the culvert, thus resulting in damages. *Id.*

For a second time, finding that there were genuine issues of material fact remaining on the issues of government contractor immunity and negligence, this Court reversed the district court's granting of summary judgment in favor of Boh Bros. and reversed and remanded this matter back to the district court.

Boh Bros. filed another motion for summary judgment ("motion") on September 1, 2023, asserting Mr. Harris cannot sustain his burden of proof on summary judgment for the following reasons: (1) Boh Bros. is entitled to government contractor immunity; (2) Mr. Harris' intentional acts, gross fault, and negligent failure to exercise due care for his own safety were the sole and proximate cause of the accident; (3) Boh Bros. did not breach any duty owed to Mr. Harris; and (4) Mr. Harris cannot sustain his burden of proof on causation. Mr. Harris opposed this motion; filed his own motion for summary judgment; and filed three motions in limine to exclude or limit the testimony under *Daubert* standards of (1) David Lirette

5

("Dr. Lirette"); (2) Raymond Burkhart ("Mr. Burkhart"); and (3) Edward Bell ("Mr. Bell").

On October 5, 2023, the district court heard both motions for summary judgment and several motions in limine filed by both parties, including Mr. Harris' three motions. At the conclusion of the hearing, the district court denied all motions in limine and granted Boh Bros.'s motion for summary judgment. The district court signed the judgment and issued a notice of signing of judgment on October 26, 2023. In its written reasons for judgment, the district court stated, in part:

> Ultimately, the Court finds that based on the law and evidence presented in this case, there is no genuine issue of material fact that *the Defendants* [Boh Bros.] *did not owe a duty to this specific plaintiff* [Mr. Harris]. This does not mean that the defendants owe no duty to the general public at all. The Court finds that the defendants [Boh Bros.] certainly had a general duty to maintain a secure fence around the construction site in order to protect third parties. However, this does not mean that the defendant [Boh Bros.] has a duty towards legally blind parties that are walking around unassisted in unfamiliar areas.

The district court made no determination regarding (1) government contractor immunity; (2) Mr. Harris' intentional acts, gross fault, and negligent failure to exercise due care for his own safety being the sole and proximate cause of the accident; or (3) Mr. Harris not being able to satisfy his burden of proof on causation.

Mr. Harris filed a petition for appeal on November 24, 2023, and the district court signed the order granting appeal on November 27, 2023. Thereafter, Boh Bros. timely answered Mr. Harris' appeal, requesting that this Court modify and/or amend the October 5, 2023 judgment, such that it is also granted on the following additional grounds: (1) Boh Bros. is entitled to government contractor immunity; (2) Mr. Harris' intentional acts, gross fault, and negligent failure to exercise due care for his own safety were the sole and proximate cause of the accident; and (3) Mr. Harris cannot satisfy his burden of proof on causation. Additionally, in its answer, Boh

Bros. requested: (1) an award of all damages, including attorneys' fees, for frivolous appeal; (2) costs as permitted under La. Code Civ. Proc. arts. 863 and 2164; and (3) any other applicable legal provision that supports an award for fees and costs related to an appeal.

## DISCUSSION

Although Mr. Harris asserts several assignments of error, the dispositive issues are whether the district court erred in denying his *Daubert* motions in limine and granting Boh Bros.' motion for summary judgment.[1]

### Motions in Limine

In response to Boh Bros.' motion for summary, Mr. Harris filed three motions in limine to exclude or limit the testimony under *Daubert* standards of (1) Dr. Lirette; (2) Mr. Burkhart; and (3) Dr. Bell. Mr. Harris' *Daubert* motions were heard on the same day as, but prior to, the hearing on his and Boh Bros.' motions for summary judgment. On appeal, Mr. Harris argues that the district court erred in denying his *Daubert* motions. However, in his reply brief, Mr. Harris specifically asserts, for the first time, that "the [district] court erred in failing to hear and decide Mr. Harris' *Daubert* Motions…pursuant to Article 966(D)(3)[2] prior to hearing and deciding Boh Bros' second [m]otion for [s]ummary [j]udgment."

---

[1] On appeal, Mr. Harris asserts four assignments of error: (1) the district court erred in granting Boh Bros.' second summary judgment when genuine issues of material fact exist on whether Mr. Harris can prove Boh Bros.' negligence; (2) the district court erred in granting Boh Bros.' second summary judgment when Boh Bros. had a duty to maintain a "Safety and Security Fence" around the construction site and to erect a retaining wall on both sides of the massive trench, and the Law of the Case doctrine applies to this Court's prior ruling that "Boh Bros. had a duty to Mr. Harris, a third party, to maintain secure fence surrounding the construction site;" (3) the district court erred in granting Boh Bros.' second summary judgment when genuine factual issues exist on whether Boh Bros. is entitled to government contractor immunity; and (4) the district court erred in denying Mr. Harris' *Daubert* Motions in Limine to exclude or limit Boh Bros.' experts, David Lirette, Raymond Burkart, and Edward Bell.

[2] Louisiana Code of Civil Procedure Article 966(D)(3) provides, "If a timely objection is made to an expert's qualifications or methodologies in support of or in opposition to a motion for summary judgment, any motion in accordance with Article 1425(F) to determine whether the expert is

7

Rule 2-12.6 of the Uniform Rules – Courts of Appeal specifies that the reply brief "shall be strictly confined to rebuttal of points urged in the appellee's brief." Boh Bros.' brief did not raise any issue with respect to La. C.C.P. art. 966(D)(3) in this case. Accordingly, the argument raised by Mr. Harris in his reply brief concerning Article 966(D)(3) is not the "rebuttal of points" raised by Boh Bros. Thus, we pretermit a discussion of this issue, as it should have been raised in Mr. Harris' original brief.

An appellate court reviews a lower court's ruling on a motion to exclude an expert witness's testimony for an abuse of discretion. *Anderson v. City of New Orleans*, 2024-0252, p. 4 (La. App. 4 Cir. 5/1/24), 390 So.3d 402, 405. However, legal error with respect to the admissibility of expert testimony is reviewed *de novo*. *Id.* at p. 5, 390 So.3d at 405-06.

"This Court recognized in *Allen v. Eagle Inc.*, 2022-0386, p. 9 (La. App. 4 Cir. 8/10/22), 346 So.3d 808, 814-15, that under the standards set forth in *Daubert* and *Foret*, a trial court is required to perform a 'gatekeeping' function to 'ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.'" *Id.* at p. 4, 390 So.3d at 405 (citations omitted). Louisiana Code of Evidence Article 702(A) provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (1) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (2) The testimony is based on sufficient facts or data;
> (3) The testimony is the product of reliable principles and methods; and

---

qualified or the expert's methodologies are reliable shall be ***filed, heard, and decided prior to the hearing on the motion for summary judgment***." (Emphasis added).

(4) The expert has reliably applied the principles and methods to the facts of the case.

The record reflects that Dr. Lirette, Mr. Burkart, and Dr. Bell each prepared expert reports addressing causation and liability issues. As it relates to Dr. Lirette, Boh Bros.'s toxicology expert, Mr. Harris asserts that "his factual contentions, disguised as expert opinions, lack any investigation, methodology, reference to any peer review treatises or any known rate of error whatsoever." According to his report and curriculum vitae, Dr. Lirette received a bachelor of science degree in pre-medical biology with a minor in chemistry, a master of science degree in toxicology, and a Ph.D. in toxicology. He has also testified as an expert in toxicology in several Louisiana state courts. Based on his review of deposition testimony, medical records, safety logs, and Google Maps, Dr. Lirette opined that Mr. Harris was inebriated – in the confusion/stupor stage of intoxication – at the time of the incident. He further opined that while in this inebriated state, Mr. Harris was either beaten and thrown into the culvert or someone attempted to escort him through a tiny gap in the fence and "guide[d] him to walk a narrow steel beam across the hole, while wearing 'flip flops', to access the side his stepdaughter lived on." Dr. Lirette's expert opinion is relevant given the fact that Mr. Harris had alcohol in his bloodstream, and his alcohol consumption may have impacted his decision-making and motor functions at the time of the incident. Further, Dr. Lirette's methodology meets *Daubert* standards for reliability as he utilized Mr. Harris' medical records from when he was admitted into the hospital after the incident. While Mr. Harris' critiques highlight weaknesses in Dr. Lirette's opinions, those weaknesses go primarily to the weight of the testimony rather than its admissibility. Therefore, we find the district court did not abuse its discretion in denying the *Daubert* motion as it relates to Dr. Lirette.

Similarly, Mr. Harris contends the district court erred in not limiting or excluding Mr. Burkhart's opinions, as he did not perform an accident reconstruction in this matter. Mr. Burkhart – Boh Bros.'s accident reconstruction expert – clarified that while he is an expert in accident reconstruction, his expertise in construction zone safety is a subcategory of accident reconstruction. He also opined that in this case, an accident reconstruction was not possible due to a lack of sufficient evidence. Mr. Burkhart's methodology meets *Daubert* standards for reliability as his application of accident reconstruction principals led him to the conclusion that such a reconstruction was not possible. Accordingly, we find no merit to Mr. Harris' argument that the district court erred in not limiting or excluding Mr. Burkhart's expert opinions.

Lastly, Mr. Harris maintains the district court erred in not limiting or excluding Dr. Bell's opinions because his opinions are outside his purported expertise of orientation and mobility of a blind person. According to his report and curriculum vitae, Dr. Bell received a bachelor of arts degree in human development, a master of arts degree in educational psychology with a concentration in orientation and mobility, and a Ph.D. in rehabilitation education and research. Dr. Bell possesses several certifications, including the National Orientation and Mobility Certification (NOMC) and National Certification in Unified English Braille (NCUEB) and is the Director of the Professional Development and Research Institute on Blindness at Louisiana Tech University. Based on his review of deposition testimony, Mr. Harris' petition, medical records, and safety logs, Dr. Bell opined, in part:

> What Mr. Harris should not have done under any circumstance short of an emergency was to attempt to navigate home on his own. Making the decision to leave on foot to return home without a sighted guide or white cane would have been a very unwise and dangerous decision by

Mr. Harris, and a decision that he, himself, says he would not have made. The decision to walk around urban city streets at night, alone, without the use of a recognized mobility device, and in an unfamiliar area would have been reckless, irrational, and likely to result in personal injury.

…

Nothing in the documents provided shows any wide-open holes in the fencing around the coffer dam/construction site, missing protective barriers, or obvious gaps through which a person could have easily fallen. Without any witnesses nor Mr. Harris'[ ] recollection of the events that transpired on April 8, 2016, I cannot know for certain how he ended up at the bottom of the Coffer Dam. What my review of the evidence does show is that Boh Bros[.] took all reasonable precautions and safeguards to protect citizens, while Mr. Harris took no such precautions nor any personal responsibility.

Dr. Bell's expert opinion is relevant given the fact that Mr. Harris is legally blind and his decision to walk in an unfamiliar neighborhood without any assistance may have impacted his orientation and mobility at the time of the incident. Further, Dr. Bell's methodology meets *Daubert* standards for reliability as he established the baseline of mobility for blind individuals and utilized Mr. Harris' medical records, deposition testimony, and safety logs to analyze the facts of this particular case. Again, while Mr. Harris' critiques highlight weaknesses in Dr. Bell's opinions, those weaknesses go primarily to the weight of the testimony rather than its admissibility. Thus, we find the district court did not abuse its discretion in denying the *Daubert* motion as it relates to Dr. Bell.

Given that Mr. Harris failed to demonstrate that the methodologies employed by these experts were unreliable under La. C.E. art. 702, the district court did not abuse its discretion in denying his *Daubert* motions. The experts' opinions were admissible, and any weaknesses in their conclusions are properly left for the trier of fact to consider. Accordingly, Mr. Harris' assignment of error as to the *Daubert* motions lack merit.

**Motion for Summary Judgment**

In *Manning v. RH Windrun LLC*, this Court explained, in pertinent part:

A motion for summary judgment is a procedural device used to avoid a full[-]scale trial when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. *Garrison v. Old Man River Esplanade, L.L.C.,* 2013-0869, p. 2 (La. App. 4 Cir. 12/18/13), 133 So.3d 699, 700; *Duncan v. U.S.A.A. Ins. Co.,* 2006-0363, p. 3 (La. 11/29/06), 950 So.2d 544, 546.

"A summary judgment is reviewed on appeal *de novo*, with the appellate court using the same criteria that govern the trial court's determination of whether summary judgment is appropriate; i.e. whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law." *Schultz v. Guoth*, 2010-0343, pp. 5-6 (La. 1/19/11), 57 So.3d 1002, 1005-1006 (quoting *Samaha v. Rau*, 2007-1726, pp. 3-4 (La. 2/26/08), 977 So.2d 880, 882–83); *Smith v. Treadaway*, 2013-0131, p. 4 (La. App. 4 Cir. 11/27/13), 129 So.3d 825, 828.

La. C.C.P. art. 966(A)(3) provides that a motion for summary judgment will be granted "if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." "The only documents that may be filed in support of or in opposition to the motion are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions." La. C.C.P. art. 966(A)(4).

The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action. La. C.C.P. art. 966(A)(2). The procedure is favored and shall be construed to accomplish these ends. *Id*. La. C.C.P. art. 966(D)(1) sets forth the burden of proof in summary judgment proceedings, as follows:

The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.

"When a motion for summary judgment is made and supported, an adverse party may not rest on the mere allegations or denials of his

pleading, but his response, by affidavits or as otherwise provided by law, must set forth specific facts showing that there is a genuine issue for trial." La. C.C.P. art. 967(B). "If he does not so respond, summary judgment, if appropriate, shall be rendered against him." *Id*.

"A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could only reach one conclusion, there is no need for trial on that issue, and summary judgment is appropriate." *Crosby v. Sahuque Realty Co., Inc.*, 2021-0167 [p. 6 (La. App. 4 Cir. 10/13/21), 366 So.3d 123, 128] (citing *Smith v. Our Lady of the Lake Hosp., Inc.*, 1993-2512, p. 27 (La. 7/5/94), 639 So.2d 730, 751). "A fact is material when its existence or nonexistence may be essential to the plaintiff's cause of action under the applicable theory of recovery; a fact is material if it potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute." *Crosby*, 2021-0167, pp. 6-7, [366 So.3d at 128-29] (citing *Chapital v. Harry Kelleher & Co., Inc.,* 2013-1606, p. 5 (La. App. 4 Cir. 6/4/14), 144 So.3d 75, 81).

A trial court may not weigh conflicting evidence or make credibility determinations in deciding a motion for summary judgment. *Danna v. Ritz-Carlton Hotel Co., LLC,* 2015-0651, p. 6 (La. App. 4 Cir. 5/11/16), 213 So.3d 26, 32 (citing *M.R. Pittman Grp., L.L.C. v. Plaquemines Par. Gov't*, 2015-0860, p. 11 (La. App. 4 Cir. 12/2/15), 182 So.3d 312, 320 and *Jeffers v. Thorpe*, 1995-1731, p. 4 (La. App. 4 Cir. 1/19/96), 673 So.2d 202, 205). Additionally, "[a]ny doubt regarding a material issue of fact must be resolved against granting the motion and in favor of a trial on the merits." *Danna,* 2015-0651, p. 7, 213 So.3d at 32 (quoting *Smith*, 1993-2512, p. 27, 639 So.2d at 751).

"Any consideration as to whether the plaintiff will succeed at a trial on the merits is irrelevant and an insufficient basis to render a summary judgment against that party." *Jones v. Gov't Emps. Ins. Co.,* 2016-1168, p. 7 (La. App. 4 Cir. 6/14/17), 220 So.3d 915, 921 (quoting *Barbarin v. Dudley*, 2000-0249, p. 6 (La. App. 4 Cir. 12/20/00), 775 So.2d 657, 660).

2023-0588, pp. 7-8 (La. App. 4 Cir. 5/1/24), __ So.3d __, ___, 2024 WL 1905039, *3-5 (quotation omitted). With these legal precepts in mind, we now turn to our review of Mr. Harris' assignments of error regarding governmental immunity and negligence.

***Government Contractor Immunity***

On appeal, Mr. Harris asserts the district court erred in granting Boh Bros.' motion because there are genuine issues of material fact regarding whether Boh Bros. is entitled to government contractor immunity. In *Harris II*, this Court cited to *Banks v. Par. of Jefferson*, 2012-215, p. 22 (La. App. 5 Cir. 1/30/13), 108 So.3d 1208, 1222, in its discussion on the *Boyle* test – the factors used to determine the applicability of government contractor immunity, and explained:

> The government contractor immunity defense provides that contractors hired by the government cannot be held liable for performing their contracts in conformity with specifications established by the government. *Hercules, Inc. v. United States*, 516 U.S. 417, 116 S.Ct. 981, 134 L.Ed.2d 47 (1996), and *Boyle v. United Tech. Corp.*, 487 U.S. 500, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988). In order for a contractor to assert the government contractor defense, three prongs must be met: (1) the government must have approved reasonably precise specifications; (2) the work must have conformed to the specifications; and (3) the contractor must have warned of any dangers that were known to the contractor, but not the government. The contractor is not required to warn of dangers which it should have known, only dangers about which it had actual knowledge. *Kerstetter v. Pacific Scientific Company*, 210 F.3d 431 (5th Cir. 2000).

*Harris II*, 2020-0248, p. 10, 322 So.3d at 406-07.

As discussed earlier, the Louisiana Supreme Court has already determined that Boh Bros. has met the first prong of the *Boyle* test. Therefore, no further discussion of this issue is necessary.

The second prong of the *Boyle* test requires a government contractor to have performed the work in accordance with the government-approved specifications. Under this second prong, Boh Bros. must establish the fence conformed with the Corps' approved plans and specifications in order to be entitled to summary judgment. In support of its motion, Boh Bros. submitted the deposition testimonies of individuals who served in various roles for this construction project – John

14

Fogarty ("Mr. Fogarty"), the Corps' resident engineer and administrative contracting officer; Lloyd Bradshaw ("Mr. Bradshaw"), the Corps' quality assurance representative; and Brett Carbo ("Mr. Carbo"), Boh Bros.' "Site Safety and Health Manager/Officer."

According to Mr. Fogarty, he never cited Boh Bros. for failing to secure the safety fencing at the end of the workday. During his deposition, Mr. Fogarty testified that he issued multiple "Contractor Performance Assessment Reports" documenting Boh Bros.' satisfactory work. He further testified that during the time period at issue in this case, he found Boh Bros.' performance and execution of its safety plan was "satisfactory."

Corroborating Mr. Fogarty's testimony, Mr. Bradshaw also testified that he never cited Boh Bros. for failing to secure the safety fencing at the end of the workday. During his deposition, Mr. Bradshaw explained that as the Corps' quality assurance representative, he was responsible for driving around the entire worksite at the end of the workday to ensure the safety fencing was secured, and he never had to issue any type of deficiency notice to Boh Bros. for not complying with the requirement to secure that safety fencing.

Furthermore, during Mr. Carbo's deposition, he testified that in his role as "Site Safety and Health Manager/Officer", he and Adreane Diaz ("Mr. Diaz") performed daily morning and evening inspections of the construction site for safety and traffic controls. According to Mr. Carbo, he never cited a Boh Bros. employee for failing to secure the fencing at the end of the day or when work was complete, and he never found a fence left open at the end of the work day. He also testified that on the day of the incident, he performed the morning traffic inspection, Mr. Diaz

performed the afternoon traffic control inspection, and no deficiencies were reported or noted for that day.

In addition to the depositions of Messrs. Fogarty, Bradshaw, and Carbo, Boh Bros. submitted the depositions of various workers who were present on the construction site the day of the incident. Concrete Foreman, Ernest Chisholm ("Mr. Chisholm"), testified that his crew entered the construction site by removing the wire ties from the fencing and moving the fencing pieces to separate them. He also testified that he and his crew always put the fencing back together after they entered the site. On the day of the incident, Mr. Chisholm did not recall seeing any fencing unsecured, and based on his recollection, another crew tied off and made sure the fencing was closed at the end of the day. During Carpenter Foreman Gerry Vanvliet's ("Mr. Vanvliet") deposition, he confirmed Mr. Chisholm's testimony as he testified that he personally put the fencing back together at the end of the day, drove around the work area twice, and observed that the fencing was properly secured at that time.

In its opposition to Boh Bros.' motion, Mr. Harris submitted Mr. Carbo's daily safety log entries from April 4 and 6, 2016. On April 4, 2016, Mr. Carbo noted, "[I]s housekeeping being maintained and kept up? Blue PVC pipe left outside the fence and fence was not closed." Moreover, on April 6, 2016, Mr. Carbo noted, "When excavation not in use[,] we should put some type of barrier to stop people from walking into the excavation." Notably, there is no safety log entry for April 8, 2016, the date of the incident.

As part of his duties as traffic control supervisor, Mr. Carbo took daily dash-cam footage of the construction site. Several of the dash-cams revealed openings in

the safety fence. Specific to this incident, there was no dash-cam footage for the morning and evening of April 8, 2016, nor the morning and evening of April 9, 2016.

Besides Mr. Carbo's daily safety logs and dash-camera footage, Mr. Harris submitted a report from William Stein ("Mr. Stein"), his engineering and construction expert. In his report, Mr. Stein concluded:

> [Boh Bros.] did not comply with their contract obligations set forth by their agreed contract. They failed to guard the work site from the public with the required 6 (six) foot high continuous safety fencing capable to withstanding 200 pounds of force and proper rigid barriers that are required by the ADA and OSHA at the site of the excavation were [sic] Mr. Harris fell in.

Based on the record before this Court, we conclude there are genuine issues of material fact as to whether the fencing conformed to the Corps' plans and specifications. Boh Bros.' submitted depositions support a finding that the safety fence surrounding the construction site was regularly closed and secured when workers left the site at the end of the workday. Conversely, Mr. Harris' submitted daily safety logs, dash-cam footage, and Mr. Stein's expert report suggest the safety fence was not closed and secured in accordance with Boh Bros.' contract with the Corps. Accordingly, Boh Bros. failed to show it was entitled to summary judgment as to this prong of the *Boyle* test.

Finding that genuine issues of material fact exist as to the second prong of the *Boyle* test, we pretermit our discussion on the third prong of the *Boyle* test and conclude that Boh Bros. failed to prove it was entitled to summary judgment under government contractor immunity as a matter of law.

### Negligence

In challenging the district court's granting of Boh Bros.' motion for summary judgment, Mr. Harris also asserts there are genuine issues of material fact concerning

17

his negligence claim against Boh Bros. Mr. Harris' lawsuit in premised on the assertion that Boh Bros. was negligent, under La. C.C. art. 2315, in securing the construction site. In its motion, Boh Bros. argued that it did not breach any duty to Mr. Harris, and Mr. Harris could not sustain his burden of proof on causation.

Louisiana Civil Code Article 2315 provides, in pertinent part, "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." Louisiana jurisprudence utilizes a duty/risk analysis in determining negligence under La. C.C. art. 2315. *Harris II*, 2020-0248, p. 20, 322 So.3d at 412 (citation omitted). Under a duty/risk analysis, the plaintiff must prove these five elements:

> (1) the defendant had a duty to conform his conduct to a specific standard (the duty element);
> (2) the defendant failed to conform his conduct to the appropriate standard (the breach of duty element);
> (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element);
> (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and
> (5) actual damages (the damages element)[.]

*Id.* (citation omitted). For purposes of this summary judgment motion, Boh Bros. was required to demonstrate an absence of factual support for at least one of these elements of Mr. Harris' negligence claim.

**<u>Duty</u>**

The first element, duty, "is a question of law; the inquiry is whether the plaintiff has any law (statutory, jurisprudential, or arising from general principles of fault) to support the claim that the defendant owed him a duty." *Id.* (citation omitted). Likewise, "a duty may arise from the nature of the undertaking, or by contract." *Id.* at pp. 20-21, 322 So.3d at 412 (citation omitted). In its written reasons for judgment,

18

the district court reasoned that "there is no genuine issue of material fact that [Boh Bros.] did not owe a duty to [Mr. Harris]…[Boh Bros.] certainly had a general duty to maintain a secure fence around the construction site in order to protect third parties. However, this does not mean that [Boh Bros.] has a duty towards legally blind parties that are walking around unassisted in unfamiliar areas."

Contrary to the district court's reasoning, this Court, in *Harris II*, explicitly concluded that "Boh Bros. had a duty to Mr. Harris, a third party, to maintain a secure fence surrounding the construction site." *Id.* at p. 21, 322 So.3d at 412-13. Boh Bros. attempts to bypass this Court's earlier pronouncement by rephrasing the district court's reasoning and arguing the district court found that Boh Bros. did not owe a "heightened duty" to Mr. Harris. We are not persuaded by Boh Bros.' rephrasing of the issue and stand by our previous finding – Boh Bros. owed a duty to Mr. Harris to maintain a secure fence surrounding the construction site.[3]

**Breach of Duty**

As to the second element, "the inquiry is whether there was a breach of the duty, which is a question of fact or a mixed question of law and fact." *Id.* at p. 21, 322 So.3d at 413 (citation omitted). Boh Bros. insists Mr. Harris has no evidence that it breached "its general duty to third parties" to maintain a secure fence surrounding the construction site.[4] In support of this position, Boh Bros. provided

---

[3] Under the jurisprudential doctrine of law of the case, "an appellate court will ordinarily not reconsider its own rulings of law on a subsequent appeal in the same case." *Holmes v. City of New Orleans*, 2024-0269, p. 3 (La. App. 4 Cir. 9/26/24), 399 So.3d 827, 830.

[4] In its reasons for judgment, the district court utilized the risk-utility balancing test in determining that Mr. Harris' "own actions were inherently dangerous and would have subjected him to injury anyways." As observed by this Court in *Harris II*, "Mr. Harris' theory of negligence is based in fault, pursuant to La. C.C. art. 2315, not premises liability under La. C.C. arts. 2317 and 2317.1." *Harris*, 2020-0248, p. 21, 322 So.3d at 413, n. 16. Therefore, just as we rejected the applicability of the risk-utility balancing test in *Harris II*, we decline to utilize this balancing test in the matter herein.

19

the deposition testimonies of several individuals who were involved with this construction project. As mentioned earlier, Messrs. Fogarty and Bradshaw testified that they never cited Boh Bros. for failing to secure the safety fencing at the end of the workday. Further, Mr. Vanvliet related that on the day of the incident, he personally put the fencing back together at the end of the workday and observed that the fencing was properly secured.

On the other hand, Mr. Harris rebutted Boh Bros.' evidence by submitting Mr. Carbo's daily safety log entries – just days before the incident – that noted the safety fence was not closed, and his dash-cam footage revealing openings in the safety fence. Additionally, Mr. Harris offered Mr. Stein's expert report, in which he concluded that Boh Bros. "failed to guard the work site from the public with the required 6 (six) foot high ***continuous*** safety fencing…." (emphasis added). Examining the submitted evidence in its totality, we find there are genuine issues of material fact regarding whether Boh Bros. breached its duty to maintain a secure fence surrounding the construction site.

### Cause-in-Fact

The third element of cause-in-fact, also known as causation, "is a question of fact, subject to the manifest error standard of review." *Id.* at p. 24, 322 So.3d at 414 (citation omitted). Under a causation analysis, courts determine "whether the conduct was a substantial factor leading to the accident, *i.e.*, whether it had a direct relationship to the accident." *Id.* at p. 24, 322 So.3d at 415 (citation omitted).

Boh Bros. asserts Mr. Harris' "intentional acts and gross fault were the sole and proximate cause" of this incident. Unfortunately, neither side has any eyewitnesses to this incident, and Mr. Harris has no memory of what occurred. However, there is testimony that Mr. Harris traveled to a convenience store in his

daughter's neighborhood accompanied by someone, and when he left the store to head back to his daughter's residence, he was traveling alone. Furthermore, Mr. Harris' toxicology reports show that shortly after being admitted into the hospital, his blood alcohol concentration level was 0.0659.

In support of its position, Boh Bros. submitted the expert opinions of Dr. Lirette, Mr. Burkart, and Dr. Bell. Dr. Lirette opined that that Mr. Harris was intoxicated and impaired, making the risk of injury "practically absolute." Dr. Lirette further determined that Mr. Harris' level of intoxication, combined with his decision to travel unescorted despite being legally blind, showed gross fault and was the proximate cause of his fall. Mr. Burkart maintained that the available evidence did not support Mr. Harris' theory that a lack of secured fencing or construction negligence caused the fall. Additionally, Mr. Bell explained that Mr. Harris' decision to walk unescorted, at night, without a cane or guide, made him "vulnerable to personal injuries" and constituted recklessness. He concluded that Mr. Harris' actions – not Boh Bros.' omissions – were the real cause of the accident. Together, these experts support Boh Bros.' argument that Mr. Harris' intoxication, blindness without precautionary devices, and personal choices amounted to gross negligence and were the sole proximate cause of his fall, rather than any breach by Boh Bros.

As discussed above, there is a genuine issue of material fact regarding whether Boh Bros. breached its duty to maintain a secure fence as Mr. Harris has presented evidence that the construction site was not properly secured with the safety fencing. The record contains evidence that supports a finding that Boh Bros.' failure to properly secure the fence was a substantial factor in Mr. Harris' fall. Photographs, dash-cam footage, and daily safety logs support Mr. Harris' argument that Boh Bros.

left open and unsecured sections of the fence in direct violation of its contractual obligations.

Moreover, expert reports explain how these deficiencies increased the risk that a pedestrian – such as Mr. Harris – would access the culvert and fall. Mr. Stein opined that Boh Bros. breached its contractual and safety obligations by failing to maintain a continuous and secured fence, failing to tie fence panels together with metal fasteners, and failing to erect required retaining walls on both sides of the culvert. His report emphasized that these omissions left open gaps that effectively invited pedestrian intrusion into the construction site. Mr. Stein concluded that proper compliance with the Corps' specifications would have prevented public access to the construction site and, thereby prevented Mr. Harris' fall. Brendan Bourdage ("Mr. Bourdage"), Mr. Harris' biomechanical expert, evaluated the mechanism of his fall, including physical forces and human-factors considerations. Mr. Bourdage concluded that unsecured and untied fencing, visible in photographs and Google Earth imagery, increased the risk that pedestrians would inadvertently enter the construction site. His report emphasized that Mr. Harris' legally blind status did not break the causal chain; instead, it made the failure to secure the perimeter fence even more dangerous. In Mr. Bouradge's professional opinion, Boh Bros.' negligence in leaving open gaps and failing to install required retaining barriers was a substantial factor in Mr. Harris' fall. Taking all of this evidence into consideration, there exists a genuine issue of material fact as to whether Boh Bros.' omissions were a cause-in-fact of Mr. Harris' injuries.

**Scope of Liability**

Turning to the fourth element, scope of liability, or legal causation, this inquiry is a mixed question of law and fact that "assumes a duty exists and questions

22

whether the injury the plaintiff suffered is one of the risks encompassed by the rule of law that imposed the duty." *Id.* at p. 25, 322 So.3d at 415 (citation omitted). "[T]he extent of protection owed to a particular plaintiff is determined on a case-by-case basis to avoid making a defendant an insurer of all persons against all harms." *Id.* at pp. 25-26, 322 So.3d at 415 (citation omitted). "In determining the limitation to be placed on liability for a defendant's substandard conduct, the proper inquiry is often how easily the risk of injury to the plaintiff can be associated with the duty sought to be enforced. " *Id.* at p. 26, 322 So.3d at 415 (citation omitted). Thus, under this element of negligence, the factfinder asks, "is the harm which befell the plaintiff easily associated with the type of conduct engaged in by the defendant?" *Id.* (citation omitted).

This Court has already held that Boh Bros. owed a duty to Mr. Harris to maintain a secure perimeter fence around the construction site. The precise harm that occurred – Mr. Harris falling into the culvert – is exactly the type of risk that the safety fence and retaining wall requirements were designed to prevent. In other words, Mr. Harris' injuries were not the result of some unforeseeable or extraordinary event. Rather, his injuries were easily associated with the duty of maintaining a secure fence surrounding the construction site.

The district court's reasoning that Mr. Harris' conduct – a legally blind individual walking on the street, unaccompanied, in an unfamiliar neighborhood – removed his injuries outside the scope of Boh Bros.' liability is flawed. Under comparative fault[5], Mr. Harris' potential negligence in walking near the construction

---

[5] Louisiana Code Article 2323(A) provides:

> A. In any action for damages where a person suffers injury, death, or loss, the degree or percentage of fault of all persons causing or contributing to the injury,

site does not absolve Boh Bros. of liability where Mr. Harris alleges that its failure to secure the fencing surrounding the construction site was a substantial factor in producing the harm. As such, Boh Bros. failed to show the absence of factual support concerning scope of liability.

**Damages**

As determined in *Harris II*, the fifth element is undisputed as "Mr. Harris suffered injuries after he fell into the culvert, resulting in damages." *Id.*

Based on our *de novo* review of the record before this Court, we conclude there are genuine issues of material fact regarding the essential elements of Mr. Harris' negligence claim. Accordingly, Boh Bros. failed to show that it was entitled to summary judgment on the issue of negligence.

**Answer to Appeal/Cross-Appeal**

In its answer/cross-appeal, Boh Bros. requests that this Court modify and/or amend the district court's judgment to recognize the following: (1) Boh Bros. is entitled to government contractor immunity; (2) Mr. Harris' intentional acts, gross fault, and negligent failure to exercise due care for his own safety were the sole and proximate cause of the accident; and (3) Mr. Harris cannot satisfy his burden of proof on causation. Based on the aforementioned reasons, this Court finds that Boh Bros.' requests in its answer/cross-appeal are not warranted as genuine issues of material fact regarding governmental immunity and negligence exists.

---

death, or loss shall be determined, regardless of whether the person is a party to the action or a nonparty, and regardless of the person's insolvency, ability to pay, immunity by statute, including but not limited to the provisions of R.S. 23:1032, or that the other person's identity is not known or reasonably ascertainable. If a person suffers injury, death, or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death, or loss.

Additionally, Boh Bros. also asserts that it is entitled to damages for frivolous appeal under La. C.C.P. arts. 863 and 2164. "Our jurisprudence reflects that '[a]ppeals are always favored and, unless the appeal is unquestionably frivolous, damages will not be granted[ ] due in part to the possible chilling effect on the appellate process.'" *Favret v. Favret*, 2022-0820, p. 21 (La. App. 4 Cir. 7/31/23), 371 So. 3d 511, 527 (citation omitted). "Likewise, because the statute allowing the imposition of damages for frivolous appeal is penal in nature, it must be strictly construed in favor of the appellant." *Id.* (citation omitted). Additionally, our "jurisprudence reflects that damages for a frivolous appeal may be awarded 'if the appellant is trying to delay the action or if the appealing counsel does not seriously believe the law he or she advocates.'" *Id.* at p. 22, 371 So. 3d at 527 (citation omitted).

Considering the record in this case, we cannot conclude that Mr. Harris' appeal is frivolous. The record does not support a finding that this appeal was filed for the purpose of delaying the action or that Mr. Harris' counsel did not seriously believe the law or position advocated. Therefore, this matter does not meet the requirements of a frivolous appeal, and we deny Boh Bros.' request for frivolous appeal damages. Accordingly, the answer to the appeal is denied.

**DECREE**

For the foregoing reasons, we affirm the district court's October 26, 2023 judgment as it relates to Mr. Harris' *Daubert* motions in limine; reverse the district court's judgment as it relates to Boh Bros.'s motion for summary judgment; remand the matter to the district court for further proceedings; and deny the answer to appeal.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED; ANSWER TO APPEAL DENIED**

25